[No. 6,044.—In Bank.]

## HARPENDING v. MEYER ET AL.

CONVERSION — BAILEE — ACTION — STATUTE OF LIMITATIONS.—Where the possession of property is obtained, (in good faith or otherwise) from one who had no right to transfer it, a right of action by the owner against the transferee accrues as soon as the latter acquires possession, and no demand or further act of conversion is necessary. Accordingly, in an action against defendants, who had, in good faith, and without notice of the plaintiff's rights, received in pledge the plaintiff's goods from her bailee, and afterward sold them, *held*, that the Statute of Limitations commenced to run from the time of the defendant acquiring possession, and not from the time of the subsequent sale by them.

APPEAL from a judgment for the defendants, in the Nineteenth District Court, City and County of San Francisco. WHEELER, J.

*Robinson, Olney & Byrne,* and *Warren Olney,* for Appellant.

The plaintiff is entitled to judgment, unless her right of action is barred by the Statute of Limitations; and if the defendants were not guilty of conversion until they sold the goods, then the action is not barred. An innocent purchaser from a wrong-doer is not guilty of conversion (while he holds possession) until informed of the defect of his title, and an opportunity given to deliver the property to the true owner. (*Parker* v. *Middlebrook,* 24 Conn. 207; *Ross* v. *Johnson,* 5 Burr. 2825; *Shelton* v. *French,* 33 Conn. 489; *Gillett* v. *Roberts,* 57 N. Y. 28; 2 Greenl. Ev. 642; 3 Phill. Ev. 540; *Buffington* v. *Ulen,* 7 Ky. 231; *Witherspoon* v. *Blewett,* 47 Miss. 570; Civ. Code, §§ 2888, 2986–3011; *Ely* v. *Ehle,* 3 Comst. 506; *Barrett* v. *Warren,* 3 Hill, 348; *Roberts* v. *Berdell,* 61 Barb. 37; *Andrews* v. *Smithwick,* 34 Tex. 544; *Blankenship* v. *Perry,* 28 id. 448; *Carroll* v. *Mix,* 51 Barb. 212; *Dudley* v. *Hawley,* 40 id. 397; *Loring* v. *Mulcahy,* 3 Allen, 575; *Johnson* v. *Couillard,* 4 id. 446; *Gillmore* v. *Newton,* 9 id. 171; *Dowd* v. *Wadsworth,* 2 Dev. 130; *Macombie* v. *Davis,* 6 East, 538; *Philpott* v. *Kelly,* 4 Nev. & M. 611; *Smith* v. *Young,* 1 Camp. 439; *Packer* v. *Gillies,* 2 id. 336 n.)

*C. L. Ackerman,* and *J. C. Bates,* for Respondents.

The cause of action accrued at the date of the conversion, and from that date the statute commenced to run. (*Granger* v. *George,* 5 Barn. & C. 149; *Short* v. *McCarty,* 3 Barn. & Ald. 626; *Brown* v. *Howard,* 2 Brod. & B. 73; *Thomas* v. *Brooks,* 6 Tex. 371; *Johnson* v. *White,* 13 Smedes & M. 584; *Thomas* v. *Greer,* 6 Tex. 372; *Ward* v. *Dulancy,* 23 Miss. 410; *Jordan* v. *Thornton,* 7 Ga. 517; *Smith* v. *Newby,* 13 Mo. 159; *Clark* v. *Marriott,* 9 Gill, 331; *Clarke* v. *Reeder,* 1 Spear, 398; *Simons* v. *Fox,* 12 Rich. 392; *Fears* v. *Sykes,* 35 Miss. 633; *Read* v. *Markle,* 3 Johns. 524; *Sims* v. *Canfield,* 2 Ala. 561; *Coffey* v. *Wilkerson,* 1 Met. (Ky.) 101.)

From the instant of the *taking* defendants were *trespassers,* and the statute ran. (*Boulware* v. *Craddock,* 30 Cal. 190;

*Lewis* v. *Johns*, 34 id. 630; *Connah* v. *Hall*, 23 Wend. 462; *Thomas* v. *Brooks*, 6 Tex. 369; *Thomas* v. *Greer*, id. 377; *Granger* v. *George*, 5 Barn. & C. 149; *Thrall* v. *Lathrop*, 30 Vt. 307; *Prime* v. *Cobb*, 63 Me. 200; *Trudo* v. *Anderson*, 10 Mich. 357; *Whitney* v. *McConnell*, 29 id. 12; *Whitman G. & C. Co.* v. *Tritle et al.*, 4 Nev. 494; *Perkins* v. *Barnes*, 3 id. 557; *Clark* v. *Lewis*, 35 Ill. 417; *Wells* v. *Ragland*, 1 Swan, 501.)

SHARPSTEIN, J.:

By the findings of fact, which are conceded to be correct, it appears that on the 5th day of April, 1873, the plaintiff deposited with one Baux of San Francisco, certain jewelry. In about one month thereafter, the plaintiff, being about to leave San Francisco and to go to St. Louis, demanded her jewelry of said Baux, and he pretending that his father had the key to the safe induced her to leave without her jewelry, promising to forward it by express to her at St. Louis, so that it would reach there nearly as soon as she would. In fact, however, he had then pawned and delivered a part of said jewelry to the defendants, who were pawnbrokers, and on the 17th day of May, 1873, he pawned and delivered a part of the residue of said jewelry to them, and on the following 9th day of July he pawned and delivered the entire residue thereof to them. Baux did not redeem the pledge, and on the 6th day of June, 1874, defendants sold it in the manner provided by law. On the 24th of July, 1876, plaintiff demanded said jewelry of the defendants, or its value, and said demand not being complied with she commenced this action. She alleges, among other things, that the defendants on the 6th day of June, 1874, unlawfully converted and disposed of said jewelry, and then alleges that on the 24th day of July, 1876, she demanded it as above stated. The judgment demanded is for the possession of the property, or if that cannot be had, for the value of it.

One of the allegations of the answer is, that the cause of action did not arise or accrue within three years before the commencement of the action, and that it is barred by subdivision 3 of § 338 of the Code of Civil Procedure. The Court rendered judgment in favor of the defendant, and from that judgment the plaintiff appeals to this Court.

The sole question which we have to consider is, whether the action was commenced within three years after the right of action accrued. All the cases agree in this, that a right of action accrues in favor of the owner of goods as soon as they are wrongfully taken from his possession, or wrongfully converted by one who rightfully came into possession of them. No right of action accrued against the defendants in this case until they took the plaintiff's property without her assent. And, according to the New York cases and decisions in some of the other States, no right of action, in the absence of a demand, accrued until they sold it. So far as we are advised, neither that or the opposite doctrine has ever been expressly adopted in this State. We are, therefore, at liberty to adopt the doctrine which we think to be the more reasonable.

The reason of the New York rule, as stated by Mr. Justice Bronson in *Barrett* v. *Warren*, 3 Hill, 348, is that " a man who innocently purchases property, supposing he should acquire a good title, ought not to be subjected to an action until he has an opportunity to restore the goods to the true owner." In this case the reason of the rule ceases, because if the defendants had not supposed that Baux had a good title to the property, a cause of action would have accrued in favor of the plaintiff at the moment of their obtaining possession of it, and consequently would have been barred by the Statute of Limitations when this action was commenced. It clearly was not the intention of the courts which laid down or adopted that rule, to place an innocent *bona fide* purchaser in a worse position than an original wrong-doer would occupy, as it obviously would when applied to a case like that now before us.

Of the New York doctrine Mr. Justice Cowen, in *Barrett* v. *Warren*, *supra*, says : " I will not, however, deny that an exception in favor of the taker, where he is a *bona fide* purchaser from the wrong-doer, has found its way into the books ; nor that however discordant it be with established principles, it may, at least in this State, have become too inveterate to be displaced." Again in the same opinion, he says : " The result is that no English adjudication creates an exception in favor of one who purchases from the tortious taker of another's property." He further expresses the opionion that the New York rule origina-

ted in a misconception of the English cases upon the subject. In this view of the matter he is sustained by Mr. Justice Metcalf, whose opinion was concurred in by Justices Shaw and Dewey, in *Stanley* v. *Gaylord*, 1 Cush. 536, who, in referring to the remarks of Mr. Justice Cowen that the rule which created an exception in favor of a *bona fide* purchaser might have become too inveterate in New York to be displaced, says : " We are not embarrassed by any decisions in this commonwealth which are discordant with established principles ; and therefore we deem ourselves not only warranted, but bound, to decide this case according to those principles which we find well stated by Weston, J., in *Galvin* v. *Bacon*, 2 Fairf. 28, as follows: " Whoever takes the property of another without his assent, express or implied, or without the assent of some one authorized to act in his behalf, takes it, in the eye of the law, tortiously. His possession is not lawful against the true owner.    That is unlawful which is not justified or warranted by law; and of this character may be some acts which are not attended with any moral turpitude.    A party honestly and fairly, and for a valuable consideration, buys goods from one who had stolen them. He acquires no rights under his purchase.    The guilty party had no rightful possession against the true owner, and he could convey none to another.    The purchaser is not liable to be charged criminally, because innocent of any intentional wrong ; but the owner may avail himself, against him, of all civil remedies provided by law for the protection of property.    If the bailee of property for a special purpose sells it without right, the purchaser does not thereby acquire a lawful title or possession.    In the case before us the defendant came honestly by the horse, but he did not receive possession of him from one authorized to give it, and is, therefore, liable *civiliter* to the true owner for the taking as well as for the detention.' "

*Stanley* v. *Gaylord, supra,* was a case where the bailee had mortgaged as security for his own debt the property of his bailor, and the mortgagee took possession of it under his mortgage ; and the bailor sued the mortgagee in trespass.

In *Galvin* v. *Bacon, supra,* the plaintiff being the owner of a horse, bailed him to A. for use for a limited period, under the expectation of a purchase by the latter.    During the time, A., for a valuable consideration and without notice, sold the horse to B.,

and he in like manner to the defendant, and the Court held that no previous *demand* was necessary to enable the owner to maintain *replevin* against the last purchaser. In Michigan and Vermont the same doctrine prevails.

In *Wells* v. *Ragland*, 1 Swan, (Tenn.) 501, it is distinctly held that where the possession of property is obtained from one who had no right to transfer it, a right of action by the owner against the transferee accrues as soon as the latter acquires possession of it; that the bare taking of possession under such circumstances constitutes a new conversion on the part of the person taking it, and that from the time of the commission of that act, the statute will commence running.

It has been held in this State that the exemption from being sued without previous demand does not apply to sheriffs who seize upon execution property in the possession of but not belonging to the execution debtor (*Ledley* v. *Hays*, 1 Cal. 160; *Boulware* v. *Craddock*, 30 id. 190; *Wellman* v. *English*, 38 id. 583); nor to an execution creditor who purchases at sheriff's sale property so seized (*Sargent* v. *Sturm*, 23 id. 359); nor to a purchaser for value who had notice, before he removed the property, sufficient to put him upon inquiry as to the true ownership, even though such notice was not received until payment of the purchase price (*Scriber* v. *Masten*, 11 id. 303). None of these cases conflict with any decision made elsewhere upon the points involved in them, so far as we are advised, and they are not cited because of any bearing that they are supposed to have upon the point now under consideration, but merely for the purpose of showing that the question under consideration is an open one in this State.

It will be observed that wherever the doctrine of exemption prevails, it is strictly limited to what are termed *bona fide* purchasers for value and without notice.

We are unable to perceive, however, that a person can ever be considered a *bona fide* purchaser of goods from one who has no right to sell, in a case where the rule *caveat emptor* applies. The law imputes notice to him. Under that rule he is not only put upon inquiry, but he is conclusively presumed to have ascertained the true ownership of the property before purchasing it. If he has notice in fact, no demand upon him for the property is necessary before commencing the action to recover it. If he is

chargeable with constructive notice, the result in all other cases
is the same. But, as we have before stated, the operation of a
rule which exempts a *bona fide* purchaser from being sued until
after demand made, is, in all the cases to which it has been ap-
plied, favorable to the *bona fide* purchaser, and it is claimed to
have been devised for his protection. If applied to this case, its
operation is exactly the reverse of that. To hold that the
statute did not commence running in favor of these defendants
from the time of the delivery of the goods to them, because at
that time they were conscious of no wrong-doing, which, if they
had been conscious of, would have set the statute in motion in
their favor, involves an absurdity. And when one construction
of the law will lead to absurd consequences and another will not,
it is the duty of the Court to adopt the latter. One construc-
tion of the law in this case would have set the statute in motion
at the time of the delivery of the goods from Baux to defend-
ants if they had known that he was not the owner of them, but
as they did not know that fact, the statute did not commence
running until they sold or otherwise converted the goods. That
is more favorable to the *mala fide* than to the *bona fide* pur-
chaser. But that must be the obvious result if we apply to this
case the rule contended for by the appellant. We are unwilling
to give a conscious wrong-doer any advantage over a constructive
wrong-doer. And the rule which we shall apply in this case
will simply have the effect to put them on an equal footing.
We shall hold, in accordance with the rule adopted in Maine,
Michigan, Vermont, and Massachusetts, that the defendants
having acquired the possession of plaintiff's property by and
through the tortious acts of Baux, and not otherwise, such pos-
session was tortious from its commencement, and constituted a
conversion of the plaintiff's property, for which she might at
any time within three years thereafter have maintained an
action without previously making any demand, and that the
omission to commence an action within that time, constitutes a
bar to this action.

Judgment affirmed.

MORRISON, C. J., McKINSTRY, J., ROSS, J., and THORNTON,
J., concurred.

MYRICK, J., dissenting :

I dissent. I think that the rule known as the New York rule would be the most proper rule to adopt in this State, and that the Statute of Limitations should be held to have commenced to run from the time of the sale of the property by the pledgee.

McKEE, J., dissenting :

I am of the opinion that the plaintiff's cause of action is not barred by the Statute of Limitations.

It is admitted that the property in controversy was delivered to the defendants by the voluntary trustee of the plaintiff in the month of May, 1873; that the defendants sold it on the 6th of June, 1874; and that the plaintiff did not discover the sale, or the fact that the defendants had got possession from her trustee, until July, 1876.

When the defendants got possession in 1873, by the transaction between them and Baux, they became, under §§ 2233, 2224, and 2243 of the Civil Code, the involuntary trustees of the property for the benefit of the owners, and subject to all the duties, rights, and obligations of that relation. In taking possession of the property, they did not take it by force or fraud from the actual or virtual possession of the plaintiff; it was delivered to them by the voluntary trustee : the taking was, therefore, not tortious.

The possession thus assumed by the defendants continued until they wrongfully deprived the plaintiff of the property by a sale, or wrongfully refused, on demand, to deliver it to him.

At the time that the plaintiff discovered the transaction whereby the defendants had got the possession, the property was not *then* in their possession. If it had been, it would have been the duty of the defendants, as involuntary trustees of the property, to have delivered it to the plaintiff on demand. Refusal to do so would have been a breach of duty. Non-delivery to the owner after notice and demand is a conversion. But the defendants had sold the property, and the sale was also a conversion, the plaintiff, however, was ignorant of the sale, and did not discover it until July, 1876. When she did discover it,

she had a right to demand of the defendants to replace the property sold, with its fruits, or to account for its proceeds. (§ 2237, Civ. Code.) In either case, I think, the legal presumption is, that the owner consents to the custody and use of her property, until she discovers that it had been wrongfully dealt with; and that a conversion took place when, upon that discovery, the trustee refused to deliver or account for it on demand.

In *Alvord* v. *Davenport*, 43 Vt. 30, a person to whom had been let a horse and buggy, left them with a hotel-keeper and disappeared. The hotel-keeper suspected something wrong, but did not know who or where the owner was, and the owner did not know where his property was. He advertised for it, but did not discover anything concerning it, until more than five years had elapsed, when he heard that the property was in the possession of the defendant, the hotel-keeper. He went and found it there, and, identifying it as his property, he demanded it. The defendant refused to deliver it, and the owner sued him in trover; and the Supreme Court of Vermont held that up to the time of the demand and refusal there was no conversion.

In *Wilkinson et al.* v. *Verity*, 6 Law R. C. P. C. 206—" where goods having been bailed by the plaintiffs to the defendant for safe custody, the defendant wrongfully sold them, and the plaintiffs, more than six years after the date of the sale, being ignorant of the fact of its having taken place, demanded the return of the goods, which the defendant refused—it was held, in an action of *detinue* for the goods, that the Statute of Limitations ran from the date of the demand and refusal, and not from that of the sale, inasmuch as the plaintiffs, in such a case, though entitled, if they had discovered the sale, to sue immediately for a conversion of the goods, were also entitled to elect to sue upon the breach of the bailee's duty in the ordinary course, by the refusal to deliver on request."

I think that the plaintiff in the case in hand was entitled to judgment, and that the judgment of the Court below should be reversed.