[S. F. No. 11437.   In Bank.—August 19, 1925.]

## SAN FRANCISCO CREDIT CLEARING HOUSE (a Corporation), Appellant, v. C. B. WELLS, Respondent.

[1] Action in Replevin—Statute of Limitations—Adverse Possession—Absence of Essentials.—In an action of replevin, a claim by the defendant that the action is barred by section 338, subdivision 3, of the Code of Civil Procedure, based upon a claim of title by adverse possession, is not sustained where the property was not held by the defendant or by those under whom he claims, openly or notoriously, continuously and uninterruptedly, for the statutory period, exclusively and under a claim of right, and the taxes were not paid by the adverse claimants.

[2] Id.—Adverse Possession—Burden of Proof.—The burden of proving all the essential elements of an adverse possession or prescriptive title is upon the party relying upon it.

---

2.   See 1 Cal. Jur. 636; 1 R. C. L. 695.

[3] ID.—STATUTE OF LIMITATIONS—LACHES.—In an action at law, the statute of limitations, rather than the doctrine of laches, furnishes the rule of decision.

[4] ID.—TITLE BY PRESCRIPTION—SECTION 1007, CIVIL CODE—SECTION 338, CODE OF CIVIL PROCEDURE.—Whether by the adoption of section 1007 of the Civil Code, providing that occupancy for the period prescribed by the Code of Civil Procedure as sufficient to bar an action for the recovery of property confers a title thereto, denominated a title by prescription, which is sufficient against all, it was intended to include personal property or not, that section in nowise modifies or limits the effect of subdivision 3, section 338, of the Code of Civil Procedure, which authorizes the commencement of an action by the owner of personal property against a wrongful converter at any time within three years from the day that the wrongdoer received the property into his possession.

[5] ID.—TAKING OR DETAINING PROPERTY—TIME OF POSSESSION.—The act of "taking," "detaining," etc., prescribed by section 338, subdivision 3, of the Code of Civil Procedure, of property relates to the person who wrongfully has the property in his possession at the time the action is commenced against him, and the fact that others may have wrongfully possessed it for fragmentary portions of the statutory period, which, taken together, would exceed the period that bars the remedy, is not a defense of which the wrongdoer, who has not possessed the property for the full period of three years, may avail himself.

(1) 2 C. J., p. 276, n. 59.   (2) 2 C. J., p. 262, n. 66.   (3) 1 C. J., p. 1153, n. 6.   (4) 34 Cyc., p. 1424, n. 63.   (5) 2 C. J., p. 83, n. 20.

APPEAL from a judgment of the Superior Court of Alameda County.  James G. Quinn, Judge.  Reversed.

The facts are stated in the opinion of the court.

R. H. Cross and A. H. Brandt for Appellant.

Hugh K. McKevitt and Joseph De Martini for Respondent.

A. H. Heer and Marvin C. Hix, *Amici Curiae.*

SEAWELL, J.—The facts of this case, the questions of law involved, and the proceedings had in the lower court

3.   See 10 Cal. Jur. 523; 16 Cal. Jur. 392.
4.   See 5 Cal. Jur. 172.

are stated generally in the opinion of the district court of
appeal and we adopt the same, supplemented by such addi-
tional facts as may seem to us to give some additional basic
support for the conclusion reached. The statement of the
case by the district court of appeal follows:

"Action in replevin to recover a certain piano and bench.

"There is no dispute as to the facts. It appears there-
from that on the 2nd day of August, 1911, the Aeolian
Company of New York, a corporation engaged in the manu-
facture and sale of musical instruments, entered into a
conditional contract of sale with one Sarah S. Rodgers for
a Weber pianola and bench. The terms of this sales agree-
ment provided for payments in installments with the usual
provision that title should not pass until completion of pay-
ments, and in case of default in any of the installments the
company could take possession of the property without de-
mand. The price agreed to be paid for the piano and bench
was the sum of $1,800, $100 of which was to be paid on the
2d day of August, 1911, $100 on the 15th day of October
following and $100 on the 15th of each and every third
month thereafter, beginning with the 15th day of January,
1912, until the entire sum with interest was paid. Pursuant
to this contract delivery of the piano was had, and there-
after and from time to time payments were made on ac-
count. The last payment occurred on January 3, 1913, and
apart from the sum of $600, which was credited as an al-
lowance for a piano turned in by the purchaser, only the
sum of $551 was paid on her account. At this time the
purchaser, the piano and the bench disappeared, and after
a lapse of some five years and shortly before the 12th day
of June, 1918, the property was discovered in the possession
of the respondent Wells, the defendant in this action. It
appears that Mr. Wells bought the piano and bench on the
29th day of November, 1915, for the sum of $925 from one
E. Curtis, an auctioneer in San Francisco. The property
had been sold by Curtis at the instance of and as the prop-
erty of one Mrs. S. J. Moran. The Aeolian Company, upon
the discovery of the piano, made an assignment of all its
rights in the instrument to the plaintiff in this action.
Formal demand was thereupon made upon Wells for its
possession, and this demand being refused the present action
in replevin was instituted.

"Additional facts show that shortly after the service of the demand by the plaintiff the defendant Wells commenced an action against Mrs. Moran, in which he sought to recover the sum of $925, which sum he had paid Curtis for the piano and bench. This action was premised upon her fraudulent representations as to ownership. Wells recovered a judgment for the full amount prayed for and costs. It appears from the return of the sheriff that he executed upon this judgment and collected the sum of $203.95, $201.92 of which was turned over to Wells and receipted for in part satisfaction of the judgment.

"At the conclusion of the trial in the instant case the court found that on the 2d day of August, 1911, the Aeolian Company was the owner of the piano and bench and that it entered into the agreement above referred to with Sarah Rodgers, and that on the 29th day of May, 1918, it had assigned and transferred its rights therein to plaintiff, who had made written demand upon defendant for the possession of the piano and bench. It further found, however, that plaintiff's action was barred by section 338, subdivision 3, section 337, subdivisions 1 and 2, and section 339, subdivision 1, of the Code of Civil Procedure, and that the action was also barred by laches, and that plaintiff did not acquire any interest in the property by virtue of the assignment, but, on the contrary, the defendant Wells was the owner thereof and entitled to the possession of the same. . . . ."

The conditional sale contract provided that said personal property was to be delivered to Mrs. Sarah S. Rodgers, whose address for delivery was given as East 58th Street, New York City. There being no other evidence as to the place of delivery, it must be inferred that said personal property was delivered to her at the place named in the contract. As to what period of time the property remained in New York City after the execution of the contract, or when, or under what circumstances it was brought into this state, the record is silent. From the day on which the last installment was paid to the Aeolian Company under said contract, to wit, January 3, 1913, to the day that said property was delivered by one Mrs. S. J. Moran to the auctioneer for sale and was purchased at auction sale by Mr. Wells, to wit, November 29, 1915, it was clandestinely possessed. As a matter of fact, said company had no knowledge of the

sale of said personal property or by whom the actual possession was held, or where it had been detained, after the day of said last payment, until it was discovered in the possession of Mr. Wells, in May, 1918, a period of approximately five years and four months. No charge of intentional wrong is imputable to Mr. Wells. No privity is shown to have existed between him and Mrs. Moran or between him and Mrs. Rodgers.

[1]  The question which seems to us to be decisive of the case is whether plaintiff's cause of action was barred by the provisions of section 338, subdivision 3, of the Code of Civil Procedure, as found by the trial court. The second question, as to whether the possession of defendant, or any one of the parties under whom he claims title, or the possession of all of them considered together, none of whom was in possession for a period of three years after a cause of action for its detention had accrued in favor of plaintiff's assignor, was legally sufficient to support respondent's claim of title by adverse possession, is discussed by respondent, but we think the latter question is rendered unimportant by the fact that the possession of the defendant, or of any or all of the persons under whom he claims, is wholly lacking in those essentials which are necessary to the creation of a title by adverse possession. Said property was not held by the defendant or by those under whom he claims, openly, or notoriously, continuously and uninterruptedly for the statutory period, exclusively and under a claim of right, nor were the taxes shown to have been paid by the adverse claimants. Neither the defendant nor his predecessors possessed said property continuously for the full statutory period. Its possession was not open and notorious but clandestine and the owner was without the means of knowing in whose possession it actually was or that the possessor asserted an adverse claim to it. In fact, the place of its location was concealed from the owner. [2]  The burden of proving all the essential elements of an adverse possession or prescriptive title is upon the party relying upon it. (1 Cal. Jur. 636; *Allen* v. *Allen,* 159 Cal. 197 [113 Pac. 160].) There is no evidence of any kind to be found in the record which tends to support a claim of title by adverse possession.

196 Cal.—45

The trial court specifically found, in addition to the bar of the statute, that plaintiff and its assignor were also guilty of laches. [3] This being an action at law, the statute of limitations, rather than the doctrine of laches, furnishes the rule of decision. (*Brownrigg* v. *de Frees et al., ante,* p. 534 [238 Pac. 714]; *Anzar* v. *Miller,* 90 Cal. 342 [27 Pac. 299]; 10 Cal. Jur. 522.)

Section 338, subdivision 3, prescribes that "an action for taking, detaining, or injuring any goods, or chattels, including actions for the specific recovery of personal property," must be commenced within three years. Mrs. Rodgers, upon disposing of the personalty to which she had no title, thereby became a converter of the same. The title remained in the seller by the terms of said contract. The last installment was paid by her on January 3, 1913. She then defaulted in all subsequent payments. Within a period of three years thereafter, to wit, November 29, 1915, the defendant became the purchaser at an auction sale. Within three years after this purchase plaintiff, after demand, brought this action to recover the possession of said property. We think the rule of law declared in *Harpending* v. *Meyer,* 55 Cal. 555, is determinative of the rights of the parties to this action. In that case Baux, a bailee, wrongfully pledged the plaintiff's jewelry to the defendant Meyer, a pawnbroker. Plaintiff subsequently commenced an action in conversion against the pledgee. The defense was made there, as here, that the action was barred by subdivision 3, section 338, of the Code of Civil Procedure. The court, in discussing the question as to when the right of action accrues in this class of cases, in part, said:

"In *Wells* v. *Ragland,* 1 Swan (Tenn.), 501, it is distinctly held that where the possession of property is obtained from one who had no right to transfer it, a right of action by the owner against the transferee accrues as soon as the latter acquires possession of it; that the bare taking of possession under such circumstances constitutes a new conversion on the part of the person taking it, and that from the time of the commission of that act, the statute will commence running. . . .

"We are unable to perceive, however, that a person can ever be considered a *bona fide* purchaser of goods from one who has no right to sell, in a case where the rule of *caveat*

*emptor* applies.   The law imputes notice to him.   Under that rule he is not only put upon inquiry, but he is conclusively presumed to have ascertained the true ownership of the property before purchasing it.   If he has notice in fact, no demand upon him for the property is necessary before commencing the action to recover it. . . .

"We shall hold, in accordance with the rule adopted in Maine, Michigan, Vermont, and Massachusetts, that the defendants having acquired the possession of plaintiff's property through the tortious act of Baux, and not otherwise, such possession was tortious from its commencement, and constituted a conversion of the plaintiff's property, for which she might at any time within three years thereafter have maintained an action without previously making any demand, and that the omission to commence an action within that time constitutes a bar to this action."   (See, also, 5 Cal. Jur. 172.)

The evidence in the instant case, being obviously insufficient to support a title of adverse possession or prescription, renders it unnecessary to consider the question whether or not it was the intention of the legislature, by the enactment of section 1007 of the Civil Code, that it should be applied to personal property.   Said section reads: "Occupancy for the period prescribed by the Code of Civil Procedure as sufficient to bar an action for the recovery of the property confers a title thereto, denominated a title by prescription, which is sufficient against all."   [4] Whether by the adoption of said section it was intended to include personal property or not, it is very clear that the section in nowise modifies or limits the effect of subdivision 3, section 338, of the Code of Civil Procedure.   That subdivision authorizes the commencement of an action by the owner of personal property against a wrongful converter at any time within three years from the day that the wrongdoer receives the property into his possession.   [5] The acts of "taking," "detaining," etc., the property relate to the person who wrongfully has the property in his possession at the time the action is commenced against him, and the fact that others may have wrongfully possessed it for fragmentary portions of the statutory period, which, taken together, would exceed the period that bars the remedy, is not a defense of which the wrongdoer, who has not possessed the

property for the full period of three years, may avail himself. This construction seems to be in harmony with *Harpending* v. *Meyer*, 55 Cal. 555, and would afford some protection to persons as to their ownership of personal property which is of an ambulatory and movable character, and easy of concealment. Less baneful consequences would probably flow from a rule that would require a fixedness or stability of possession before an owner of property, without fault on his part, could be deprived of its use and enjoyment than that which would follow the confusion of "tacking" the possessions of many holders of various durations, residing in various neighborhoods and with the situation further embarrassed by the difficulties of identification.

A careful examination of the decisions of this state has failed to disclose to our investigation a single case in which section 1007 of the Civil Code has been applied to the acquisition of title to personal property. Said section has been cited and interpreted many times in cases involving the title to property real. In *Thomas* v. *England*, 71 Cal. 456 [12 Pac. 491], this court, in interpreting said section, said: "This section merely fixes the time in which a right by prescription shall be acquired, but does not alter the requisites which before the code were essential to the growth of a prescriptive right. (*Woodruff* v. *N. B. G. M. Co.*, 18 Fed. 753 [9 Sawy. 441].)

"The user must be adverse to the true owner. (*Anaheim W. Co.* v. *Semi-Tropic W. Co.*, 64 Cal. 185 [30 Pac. 623].)

"If the user must be adverse, then it must be accompanied by the elements required to make out an adverse possession." (See, also, *Sullivan* v. *Zeiner*, 98 Cal. 346 [20 L. R. A. 730, 33 Pac. 209]; *Alhambra etc. Water Co.* v. *Richardson*, 72 Cal. 598 [14 Pac. 379]; *People's Water Co.* v. *Anderson*, 170 Cal. 683 [151 Pac. 127].)

Said property was not taken from the possession of the original conditional purchaser for a tax, assessment, or fine or pursuant to any statute and the title thereto could not have been transferred by her without the consent of the seller. Mrs. Rodgers never having acquired title by her possession and her successors in interest not having possessed or occupied said property for the period required by subdivision 3, section 338, *supra*, the privilege of the statute

of limitations is not, therefore, available to the defendant as a defense to the action.

The judgment is reversed.

Richards, J., Lawlor, J., Lennon, J., and Waste, J., concurred.

MYERS, C. J., Concurring.—I concur. If, however, we should assume that section 1007 of the Civil Code applies to personal property and that title to such property may, therefore, be acquired by prescription, I am not prepared to say that the occupancies of successive possessors who are in privity with one another could not be tacked for that purpose. That question is not necessary to be determined in this case for the reason pointed out by Mr. Justice Seawell, that the essential elements of open and notorious adverse possession under claim of right, coupled with payment of taxes, are wholly lacking herein.