[No. A066580. First Dist., Div. One. Mar. 15, 1996.]

SOCIETY OF CALIFORNIA PIONEERS, Plaintiff and Appellant, v. ROGER BAKER, Defendant and Appellant.

**COUNSEL**

Tobin & Tobin, Keith A. Kandarian, Pillsbury, Madison & Sutro, Robert M. Westberg and Joseph A. Hearst for Plaintiff and Appellant.

Leland, Parachini, Steinberg, Flinn, Matzger & Melnick and David B. Flinn for Defendant and Appellant.

Crosby, Heafey, Roach & May, Carla J. Shapreau, Paul D. Fogel and Jacques B. LeBoeuf as Amici Curiae on behalf of Plaintiff and Appellant.

## OPINION

**DOSSEE, J.**—This case concerns application of a 1983 amendment to Code of Civil Procedure[1] section 338, subdivision (c) which added a delayed accrual provision to the statute of limitations for stolen art works. Due to the timing of the transfers of ownership of the object in issue, the prior three-year statute had not expired at the time of the 1983 amendment. We therefore conclude that the amended statute applies in the instant case and reverse.

### BACKGROUND

In the early 1960's, Christian deGuigne's father purchased a gold quartz cane handle from Berry-Hill Galleries. The cane handle was inscribed on the top with the words: "[t]o Joseph Lee of New York from B. Tallman of California." The knob of the handle was hinged and engraved inside was a view of Sutter's Mill and the words "Sutter's Mill" and "Coloma," the scene of the first California gold strike in 1849. In 1962, deGuigne's father donated the cane handle to the Society of California Pioneers (the Society). Between 1962 and 1978, the Society owned the cane handle and, apart from a loan to Yale University, did not consent to any loans or conveyances of the item.

In 1978, Roger Jobson, executive director of the Society, placed the cane handle on display with other gold artifacts. At that time, the handle was stolen by an employee, identified in this litigation by the initials "L.M."[2] Jobson reported the theft to the police and the board of directors of the Society. The board instructed Jobson to "keep mum" regarding the theft. DeGuigne, a member of the Society's board of directors, placed a classified advertisement offering a $1,000 reward for a lost cane head and gold flat-wear. DeGuigne had found such advertisements to be successful in retrieving stolen property in the past. Through the advertisement, deGuigne was able to recover some of the other gold items that had been stolen. Between 1978 and 1991, deGuigne, who was a collector of gold quartz items, heard that the cane head was in existence but did not learn who possessed it.

In 1980, Eugene Kah of San Francisco received the cane head as a gift from his mother, Olga Lomakin. Mrs. Lomakin was an antiques collector,

---

[1]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.
[2]The employee was not involved in this action.

who owned many antique objects. Mr. Kah had never seen the item before his mother gave it to him, nor did he know how she acquired it. The settled statement submitted on appeal regarding Kah's testimony indicates that Kah did not know the item had been stolen. Kah's mother, who had been ill at the time of giving the gift, died in 1983. Sometime in the mid-1980's, Kah attempted to research the provenance, or origin, of the cane handle. He inquired at the California Historical Society and received some information on the "B. Tallman cane head," including an auction announcement from the Hans Schulman Gallery. When Kah called the gallery, he learned that it was no longer in business and had no early records. From the public library, Kah obtained a book that described the cane handle. In 1988 or 1989, Kah took the cane handle to Butterfield & Butterfield auction house for appraisal and was told it was worth $2,500. An antique dealer in San Francisco valued it between $2,500 and $5,000. A jeweler on Market Street estimated the value at $10,000.

Between 1988 and 1990, Kah pawned the cane handle on five occasions. Each time, a pawn slip was filed with the police department, which described the item as "cane handle" with the brand "Coloma." Police Officer Eduardo Martinez testified that incident reports of stolen property were held for only 10 years and that the report of the cane handle's theft had been destroyed by 1988. In any event, the police had no way to check a stolen item which had no serial number against a pawn slip.

In early 1991, Kah saw collector Roger Baker exhibiting his antique gold collection on television. He called Baker and discussed the cane handle. On April 1, 1991, Baker and his wife came to Kah's house and negotiated a conditional purchase agreement regarding the cane handle. The agreement provided that Baker would purchase the cane handle for $20,000, only after he received expert assurance that the item was a "genuine antique in all respects . . . ." Under the terms of the agreement, Baker had until April 18 to conclude his examination of the cane handle.

According to Baker, he knew he had to exercise care in this matter, since Kah did not know how his mother had obtained the item. Baker intended to check the authenticity of the item as well as its provenance, which he defined as "the historical lineage of ownership in a piece." Toward that end, Baker took the piece to Jim Lun, a friend who did restoration work and was familiar with engraving styles. Lun confirmed the authenticity of the item. Shortly thereafter, Baker encountered deGuigne at an antique show. Baker knew deGuigne had collected gold quartz for 20 to 25 years and was a member of the Society. Baker testified that he described the gold cane handle to deGuigne and that deGuigne indicated he had no knowledge of the

item. Satisfied that the item was authentic, Baker closed the purchase on April 18, 1991.[3]

According to deGuigne's testimony, he spoke with Baker at the antique show, who told him only that he was "on to something great" but would not tell deGuigne what it was. DeGuigne recalled giving Jobson's telephone number to Baker in response to Baker's request for someone to do research.[4] Baker did not tell deGuigne what type of research he was conducting. DeGuigne testified that Baker never described the cane handle to him. Jobson did not recall ever having a telephone conversation with Baker, or with anyone inquiring about the cane handle. On September 12, 1991, deGuigne went to Baker's home and demanded return of the cane handle. According to Baker, deGuigne stated that he had not mentioned the Society's ownership of the handle earlier because he thought the statute of limitations had expired.

On September 16, 1992, the Society filed a complaint for conversion against Baker. Baker filed an answer and a cross-complaint against the Society, deGuigne and Kah, alleging causes of action for promissory estoppel, slander of title, indemnity, and requesting damages. Kah filed a cross-complaint against Baker, the Society and deGuigne for breach of contract, fraud, negligence, abuse of process, and negligent and intentional infliction of emotional distress.

On February 15, 1994, the court denied the Society's motion for summary judgment on affirmative defenses, finding that there were material disputed fact issues regarding the estoppel defense.[5] On February 22, 1994, the first phase of the bifurcated trial began. This phase concerned the Society's complaint, its ownership of the cane handle, and the affirmative defenses of estoppel, waiver, consent, abandonment, unclean hands, adverse possession, and the statute of limitations.

On March 4, 1994, the jury returned special verdicts finding the cane handle was the property of and had been stolen from appellant. The jury also determined that appellant was not barred from recovering the item by the

---

[3]A typed memorandum signed by Kah and Baker stated that Kah received $20,000 cash for the cane handle. The memo stated that Kah guaranteed "clear title to this piece."

[4]Jobson testified that he did not speak with Baker, or anyone else, regarding the cane handle in April of 1991.

[5]The issues the court found to be disputed were whether Baker contacted the Society or deGuigne before purchasing the cane handle and whether the Society failed to inform him that it owned the cane handle.

conduct of any of its officers, employees, or agents. Regarding an advisory issue submitted to the jury, the verdict stated that the cane handle was "held prior to September 16, 1992 by Eugene Kah and/or Roger Baker in an open and notorious manner, hostile to a true owner for a period of three or more years."

On March 7, 1994, the issue of the statute of limitations was argued to the court. The court determined that the amended version of the statute of limitations was not applicable to the instant case.[6] The court applied the former three-year statute of limitations, which did not contain a discovery provision, and found that the action was barred. Kah proceeded with the trial on his cross-complaint. Baker indicated that his cross-complaint was premised on an adverse verdict and dismissed the cross-complaint. At the close of evidence on Kah's cross-complaint, the court granted motions for nonsuit on all causes of action.

Judgment was entered in favor of Baker on the complaint and against Kah on his cross-complaint. The Society appealed, and Baker cross-appealed, arguing that if we reverse the judgment, appellant is entitled only to a new trial, not to entry of judgment in its favor. Baker also argues that if we reverse, he is entitled to have his cross-complaint reinstated.[7]

## DISCUSSION

On appeal, the Society urges reversal, arguing that the amended version of the statute applies, and that even under the old version, each new possession of a stolen chattel was considered a new conversion which started the statute of limitations running anew. Respondent Baker argues to the contrary and claims that the judgment may be supported on other grounds. Amici curiae, several nonprofit art organizations and art museums, argue for retroactive application of the amended statute. We discuss the state of the law prior to the amendment and the application of the amended statute to this case, and determine that the three-year statute of limitations had not expired as to

---

[6]The court erroneously referred to the "1991" statute. The parties agree that the court was intending to refer to the 1983 amendment to section 338, subdivision (c), which added the discovery provision. A 1989 amendment substituted "article[s] of historical, interpretive, scientific, or artistic significance" for the words "art or artifact." (See Amendments, Deering's Ann. Code Civ. Proc. (1991 ed.) § 338, p. 215.)

[7]Neither Kah nor deGuigne has participated in this appeal. Kah's counsel has requested that we strike the references in respondent's brief which request reinstatement of the cross-complaint against Kah, claiming lack of notice of the appeal. We deny that request, since both deGuigne and Kah were given notice of the appeal, as well as the cross-appeal of Baker, and are listed in the proof of service on respondent's brief.

Kah's possession when the statute was amended. Application of the amended version of the statute compels reversal of the judgment and entry of judgment in favor of the Society.

*Application of Pre-1983 Statute*

■ Prior to 1983, section 338, subdivision (c) provided a three-year statute of limitations for an action involving the taking, detaining, or injuring of chattels.[8] The trial court determined that the pre-1983 version of the statute applied to bar appellant's action. A review of cases interpreting the earlier statute indicates that the action could not have been barred as the trial court determined.

The earliest case brought to our attention which discusses the statute is *Harpending* v. *Meyer* (1880) 55 Cal. 555. In *Harpending,* the Supreme Court held that the three-year statute of limitations began to run when the defendants acquired the plaintiff's property from a wrongful possessor. (*Id.* at p. 561.) Plaintiff in *Harpending* left her jewelry with one Baux in April of 1873. When plaintiff demanded return of the jewelry the following month, Baux falsely told her that he would send it to her at her new address. (*Id.* at p. 557.) Actually, Baux had pawned a portion of the jewelry to defendants. On July 9, 1873, Baux pawned the balance of the jewelry and failed to redeem it. In June 1874, defendants sold the jewelry. It was not until July 24, 1876, that plaintiff demanded the jewelry and commenced an action for conversion. (*Ibid.*) Plaintiff argued that the statute did not begin to run until her demand. The court rejected this argument and held that the three-year provision of section 338, subdivision (c) began to run when the defendants obtained the jewelry.

Plaintiff in *Harpending* also argued that the defendants had not actually converted the property until they sold it. (*Harpending* v. *Meyer, supra,* 55 Cal. at p. 556.) The court rejected this argument, and reasoned that ". . . the defendants having acquired the possession of plaintiff's property by and through the tortious acts of Baux, and not otherwise, such possession was tortious from its commencement, and constituted a conversion of the plaintiff's property, for which she might at any time within three years thereafter have maintained an action without previously making any demand . . . ."

---

[8]Section 338, subdivision (c) provided: "Within three years: [¶] . . . [¶] [a]n action for taking, detaining, or injuring any goods or chattels, including actions for the specific recovery of personal property." Subdivision (c) was designated as subdivision (3) until 1988. (See Historical Note, Deering's Ann. Code Civ. Proc., *supra*, § 338, p. 215.) For convenience, we refer to the subdivision as (c) when discussing any version of the statute.

Since the plaintiff had failed to commence her action within the three years after defendants obtained the jewelry, the action was barred. (*Id.* at p. 561.) Respondent misconstrues the facts of the *Harpending* case in arguing that it rejects the "new conversion" theory. Respondent's error is that he reads the case as holding that the original conversion by Baux commenced the running of the statute. In fact, it was the receipt of the property in 1873 by the defendant pawnbrokers, rather than the earlier acts of Baux, that commenced the running of the statute. (*Id.* at p. 561.) *Harpending* is no help to respondent, for it holds that receipt by the subsequent holders commenced the running of the statute as to them.

In *San Francisco Credit C. House* v. *Wells* (1925) 196 Cal. 701 [239 P. 319], the court again discussed section 338, and reaffirmed its holding in *Harpending*. (*San Francisco Credit, supra,* 196 Cal. at p. 706.) Again, respondent misconstrues the facts and law of the case. *San Francisco Credit* involved the sale of a piano on an installment contract to Sarah Rodgers on August 2, 1911. In January of 1913, the payments stopped, and Rodgers and the piano disappeared. In November of 1915, defendant Wells bought the piano from an auctioneer. A Mrs. Moran had assigned the piano to the auction house. (*Id.* at p. 703.) In May of 1918, the piano was discovered in defendant's possession. The plaintiff demanded its return and, upon refusal, filed an action against Wells. (*Id.* at p. 705.)

The court applied the *Harpending* rule, finding that Rodgers converted the piano in 1913 when she ceased payments, disappeared, and disposed of the piano, and that within three years of that time, Wells purchased it at an auction. (196 Cal. at p. 706.) The court further stated that because the action was brought within three years of Wells's acquisition of the piano, it was timely. (*Id.* at pp. 706, 708-709.) Like *Harpending*, the *San Francisco Credit* court found that the statute began to run against a subsequent purchaser from the time he obtained possession, rather than from the time of the original conversion. Respondent's contention that the case was based solely on the doctrine of adverse possession is incorrect, as demonstrated by the court's statement that: "[t]he evidence in the instant case, being obviously insufficient to support a title of adverse possession or prescription, renders it unnecessary to consider the question whether or not it was the intention of the legislature [that the doctrine of adverse possession] should be applied to personal property." (*Id.* at p. 707.)

*Harpending* and *San Francisco Credit* state the law as it applied to actions for stolen property prior to 1983. Thus, later cases held that the statute of limitations in an action concerning stolen property began to run anew against

a subsequent purchaser.[9] (*First National Bk.* v. *Thompson* (1943) 60 Cal.App.2d 79, 82 [140 P.2d 75] [statute of limitations for conversion begins to run when defendant obtains property, not at time of original conversion]; *Culp* v. *Signal Van & Storage* (1956) 142 Cal.App.2d Supp. 859, 861 [298 P.2d 162] [purchaser from one with no title is guilty of conversion, statute begins to run at time of purchase].) Applying the rule to the instant case, we note that the cane was stolen in 1978. Less than three years later, in 1980, Kah acquired it. Thus, according to the *Harpending* rule, the statute began to run anew at this time. The limitation period in favor of Kah would have expired in 1983, unless the amendment of section 338 applied to matters in which the statute had not already expired, which brings us to the next issue.[10]

## Application of Amendment of Limitations Statute to Matters Not Barred

Effective January 1, 1983, the Legislature amended section 338, subdivision (c) to add the following sentence: "The cause of action in the case of theft, as defined in Section 484 of the Penal Code, of any art or artifact is not deemed to have accrued until the discovery of the whereabouts of the art or artifact by the aggrieved party, his or her agent, or the law enforcement agency which originally investigated the theft."[11] A 1989 amendment substituted the word "article" for "art or artifact" and added "of historical,

---

[9]Both *Harpending* and *San Francisco Credit* involved subsequent possessors who acquired the stolen article before the limitations period had expired. Because we ultimately determine that the amended statute applies here, we need not decide whether a purchaser who acquired the item after the statute expired would be subject to renewal of the limitations period. (See, e.g., *O'Keeffe* v. *Snyder* (1980) 83 N.J. 478 [416 A.2d 862, 875], stating that it would be an extension of common law doctrine to hold that a subsequent transfer revives an action already barred by the statute of limitations.)

[10]We are aware of the recent case of *Naftzger* v. *American Numismatic Society* (1996) 42 Cal.App.4th 421 [49 Cal.Rptr.2d 784], which held that the pre-1983 law imposed a discovery rule of accrual as to all stolen property. *Naftzger* did not discuss *Harpending, San Francisco Credit C.,* or *Culp,* and distinguished *First National Bk.* v. *Thompson, supra,* 60 Cal.App.2d 79, because it involved the entrustment of property to a third party in a way that misled the defendant. We note that *First National Bk.* was not based on the conduct of the bank, but merely set out the rule that the statute of limitations begins to run when the defendant obtains possession of the stolen item. In addition, *Naftzger* stated that the plaintiff's diligence has no bearing on the statute of limitations issue. As we discuss, *post,* if the standard imposed by the amended statute is one of constructive notice, the question of reasonable diligence has some bearing on that issue, since, in some circumstances, one is charged with notice of what a reasonable inquiry might disclose. Because we reach a different conclusion as to the state of the law prior to the 1983 amendment, we must respectfully disagree with the discussion in *Naftzger.*

[11]Section 484 of the Penal Code encompasses theft by felonious taking as well as by fraudulent appropriation or representation. Respondent incorrectly argues that this reference limits the application of section 338 to thieves. However, by its language, section 338 applies "in the case of theft" and not merely to actions against a thief. By restricting application of the

interpretive, scientific, or artistic significance" as the words describing the articles subject to the statute. (See 1989 Amendment, Deering's Ann. Code Civ. Proc., *supra*, § 338, p. 215.) Amici curiae have requested that we take judicial notice of the legislative history of the 1983 amendment. ▮ We have reviewed the materials submitted, and we consider those portions that reflect true indicia of legislative intent and exclude materials that merely reflect personal opinions of individual legislators. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698-701 [170 Cal.Rptr. 817, 621 P.2d 856]; *County of San Diego* v. *Superior Court* (1986) 176 Cal.App.3d 1009, 1021 [222 Cal.Rptr. 484].)

▮ Appellant argues that the amendment applies to causes of action that were still pending at the time of the amendment, while amici curiae argue further that the amendment should be given full retroactive application. Respondent argues that the statute began to run at the time of the theft and had already expired prior to the 1983 amendment. We agree with appellant's argument.

▮▮ Statutes of limitation in civil matters are procedural, and the Legislature has the power to revive even time-barred common law causes of action. (*Liebig* v. *Superior Court* (1989) 209 Cal.App.3d 828, 832, 835 [257 Cal.Rptr. 574].) "It is the settled law of this state that an amendment which enlarges a period of limitation applies to pending matters where not otherwise expressly excepted. Such legislation affects the remedy and is applicable to matters not already barred, without retroactive effect. Because the operation is prospective rather than retrospective, there is no impairment of vested rights." (*Mudd* v. *McColgan* (1947) 30 Cal.2d 463, 468 [183 P.2d 10]; *Angeli* v. *Lischetti* (1962) 58 Cal.2d 474, 478-479 [24 Cal.Rptr. 845, 374 P.2d 813], *O'Loughlin* v. *Workers' Comp. Appeals Bd.* (1990) 222 Cal.App.3d 1518, 1522 [272 Cal.Rptr. 499]; *Kuykendall* v. *State Bd. of Equalization* (1994) 22 Cal.App.4th 1194, 1211, fn. 20 [27 Cal.Rptr.2d 783].)

The statute of limitations had not yet expired when section 338 was amended in 1983. Therefore, the amendment applied to this action, making the discovery rule the appropriate measure of accrual of appellant's cause of

discovery rule to thieves, respondent's interpretation would negate the apparent intent of the amendment, which was to extend the period in which stolen art objects could be recovered, without regard to the culpability of the defendant. An earlier version of the amendment contained a specific reference to criminal prosecutions of thieves. That paragraph was deleted prior to enactment of the amendment. (Compare Assem. Bill No. 2296 (1981-1982 Reg. Sess.) introduced Sept. 9, 1981, with Assem. Bill No. 2296, as amended by Assem. on Jan. 25, 1982.) This deletion provides an indication of the intent to eliminate any significance to the criminal culpability of the ultimate possessor.

action.[12] Our determination that the instant matter could not have been time barred at the time of the amendment and is subject to the amended statute, makes it unnecessary for us to address the argument of amici curiae that the statute should be applied retroactively.[13] Appellant argues that regardless of whether we determine that the amended statute imposes a rule of actual or constructive discovery, the evidence compels a judgment in its favor. For the following reasons, we agree with that argument.

*Accrual of Cause of Action Under Discovery Rule*

The trial court's application of the earlier version of the statute of limitations precluded its consideration of when appellant, its agents, or the police discovered the whereabouts of the cane handle. Appellant and amici curiae argue that whether the standard is actual or constructive discovery, the evidence shows that knowledge of the location of the stolen item could not be attributed to appellant prior to deGuigne's discovery that Baker had purchased it in 1991. We agree. Although the jury did not make a special finding on the issue of discovery, the facts regarding appellant's actions in trying to locate the property, the knowledge of deGuigne regarding the property, and the actions taken by Kah and Baker were all presented to the

---

[12]Even if Kah had received the cane handle from his mother on the first day of 1980 (a factual assumption which no one has argued), section 12 provides that in computing time, the first day is excluded and the last day, unless it is a holiday, is included. When the last day for the performance of an act required by law falls on a holiday, the time period is extended to the next day. (§ 12a.) These general provisions apply to the computation of time for statutes of limitation. (*DeLeon* v. *Bay Area Rapid Transit Dist.* (1983) 33 Cal.3d 456, 460-461 [189 Cal.Rptr. 181, 658 P.2d 108].) According to the reasoning in *DeLeon*, the last day an action could have been filed against Kah would have been January 1, 1983, which was a holiday —New Years' Day. (Gov. Code, § 6700.) This holiday extended the time until January 2, 1983, which was after the effective date of the amendment. (*DeLeon, supra,* 33 Cal.3d at pp. 457-458.)

[13]Baker argues that even if the amended statute is applicable to the instant action, he and Kah have established a complete defense that they adversely possessed the cane handle for more than three years. The jury's opinion on the issues of the open, notorious and hostile joint ownership by Kah and Baker was advisory only and has no impact here. The court in *San Francisco Credit C. House* v. *Wells, supra,* 196 Cal. 701, 707, suggested that the doctrine of adverse possession would not apply to personal property, and no California case has been cited in support of such an application. We note that this issue does not appear to be settled. (See, e.g., 4 Witkin, Summary of Cal. Law (9th ed. 1987) Personal Property, § 99, pp. 94-95, stating that the right to acquire personal property by adverse possession seems available.) Even if we held that the doctrine of adverse possession applies to personal property, which we do not, it would not help respondent Baker, for the concept of "tacking" does not apply in California, and Baker himself did not hold the item for three years. (*San Francisco Credit C. House* v. *Wells, supra,* 196 Cal. 701, 707-708 [wrongful possessor may not add the time of possession of his predecessor to his own possession]; *Bufano* v. *City & County of San Francisco* (1965) 233 Cal.App.2d 61, 71 [43 Cal.Rptr. 223] [application of doctrine not well established].)

jury in the context of the affirmative defenses of adverse possession, waiver, consent, and estoppel.[14] The jury decided in appellant's favor on all of these issues.

"Generally, notice, including constructive notice, is an issue of fact, and is normally determined by a jury. [Citation.]" (*Charash* v. *Oberlin College* (6th Cir. 1994) 14 F.3d 291, 300.) Civil Code section 19 provides "[e]very person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." The *Charash* case involved drawings by the artist, Eva Hesse, which had been misappropriated and donated to the defendant college. In a summary judgment motion on the issue of constructive notice, defendants produced evidence of an exhibition catalogue listing the drawings and a bulletin referring to the misappropriated drawings. Plaintiff's declaration stated that she saw the items, but did not realize they referred to Hesse works of art other than ones she had donated or authorized. (14 F.3d at pp. 295, 300.) The court found that notice was a material disputed factual issue which precluded summary judgment.

In contrast, the instant case follows a complete jury trial, with findings against respondent on affirmative defenses which are closely related to the notice issue. No facts were produced by respondent that indicated the Society or its agents had actual notice or knowledge of any facts that would have imputed constructive notice of the location of the stolen item or to a line of further inquiry that would have led to notice or knowledge.

According to Kah's own testimony, he did not pawn or otherwise publicly expose the item until over 10 years after the theft. DeGuigne testified that his only knowledge of the item was from an antique dealer who told him that he saw it in the late 1980's. DeGuigne indicated he would have bought the item, but the opportunity apparently never materialized. This type of rumor is not sufficient to give notice of the location of the item. Respondent

---

[14]The jury was instructed on the elements of all of the defenses. In discussing the instructions and the wording of the verdict forms with the court, counsel agreed that the general question, "Is the plaintiff barred from recovering the cane head by the conduct of any of its officers, employees, or agents," would represent the jury's ultimate conclusion as to all of the affirmative defenses. Counsel initially proposed several special verdict questions, including one regarding when the Society learned the location of the stolen item. Counsel for appellant and Baker agreed that the more general question regarding conduct would cover all issues submitted. Counsel were allowed to argue all issues to the jury. The diligence, or lack thereof, of the Society in publicizing the theft and seeking to recover the item was argued to the jury. The jury decided the issues raised by the affirmative defenses in favor of appellant.

does not indicate what further steps deGuigne might have taken at this time aside from the suggestion that the Society should have instituted continuous monitoring of police reports from pawnshops.[15] The steps a party should take to recover stolen art objects vary according to the facts of each case and are, therefore, subject to proof of the relevant standard in the particular community affected. For example, in *Solomon R. Guggenheim Found.* v. *Lubell* (1991) 77 N.Y.2d 311 [567 N.Y.S.2d 623, 569 N.E.2d 426], the court discussed many factors, including standards in the particular art community, value of the property, manner of the theft and other individual considerations bearing on the issue of discovery of the missing item. In the instant case, there was no showing that reason would require the Society to make regular checks of such pawnshop reports, particularly in light of the fact that this item was not pawned for 10 years after the theft.

The only testimony regarding the appropriate action to be taken by a property owner came from appellant's witnesses, such as deGuigne, who stated that he had success in the past in recovering stolen items by notifying the police and placing a classified advertisement. In addition, deGuigne, who was a collector himself, apparently worked with others to locate and identify stolen items through collecting activities and had recovered items in the past using these measures. Our review of the record on appeal indicates that the parties had the opportunity to, and did, present evidence of appellant's knowledge and diligence in seeking its property. The evidence of how similar stolen property had been recovered in the past was undisputed. The measures taken by the Society in its attempts to recover the stolen cane handle were also established by undisputed evidence. Respondent presented no evidence of additional measures that might have been either reasonable or successful. Establishment of the facts regarding the lack of actual or constructive notice was implicit in the jury's rejection of the affirmative defenses. These implicit findings are supported by the uncontradicted evidence.

We find that whether the correct standard is actual or constructive notice, appellant could not have been charged with notice of the location of the item more than three years before this action was commenced.[16]

---

[15]At trial, Baker argued that the Society should have maintained contact with police to review and investigate pawnshop reports. The first time the item was pawned was in 1988, 10 years after the theft. There was no evidence that such long-term measures were usual in the relevant community, or that such extended surveillance was reasonable, as a method of diligence to discover the location of stolen artistic or historic objects.

[16]Respondent argues that we should uphold the judgment because the trial court was entitled to conclude that the cane handle was not the type of object covered by the amended

*Cross-appeal of Baker*

█ Baker characterizes his cross-appeal as "protective," arguing that if we should find the amended statute of limitations applies, appellant is entitled only to a new trial, not to judgment, and that Baker's cross-complaint must be reinstated. Despite the trial court's application of the incorrect statute of limitations in this case, the facts underlying the issues of when the cause of action accrued, and the reasonableness of a plaintiff's acts in discovering the missing property were presented and argued to the court and to the jury.[17]

Baker has identified no additional facts which were not resolved in regard to the reasonableness of appellant's efforts, and the record makes it clear that the parties intended to, and did, try all issues involved in the complaint and the affirmative defenses at the trial.

The second matter raised in Baker's cross-appeal is whether he is entitled to reinstatement of his cross-complaint. The cross-complaint contained causes of action for promissory estoppel against the Society and deGuigne for failing to tell him the item was stolen before he bought it, slander of title for stating that he had purchased stolen property, and indemnity against Kah. It appears, from the record submitted on appeal, that Baker dismissed his cross-complaint because he felt it was based on harm caused by his loss of the cane handle. When the trial court ruled in his favor, the cross-complaint appeared moot, and Baker's counsel dismissed it. Counsel for deGuigne agreed that there were no viable claims remaining for Baker after the statute of limitations ruling. We agree with Baker that one portion of the cross-complaint remains viable on remand. That claim is the one for indemnity

---

statute. This theory was not raised at trial, and is not supported by the evidence. The deposition of James Berry Hill, included in the record on appeal, refers to the item's rarity, and the fact that the cane handle was cataloged and featured in a book, and, therefore, photographed as "any fine work of art." Baker testified it was unique. Exhibits included in the joint appendix on appeal describe the item as having been made to commemorate the gold rush of 1849, by a goldsmith from locally mined gold. There was no contrary evidence to indicate that the gold quartz cane handle was not the type of artistic object covered by the amended statute.

[17]Baker speculates that the jury may have rendered the adverse verdict on the affirmative defenses because it thought the issues were mooted by the adverse possession finding. He also argues that the verdict for the plaintiff on the affirmative defenses could have resulted from a belief that deGuigne was not an agent of the Society. There is nothing to support respondent's speculations, and the verdict on the complaint and defenses is supported by substantial evidence.

against Kah.[18] Consequently, on remand, Baker is entitled to reinstatement of this claim.

## CONCLUSION

The amended version of the statute of limitations governs this action because the statute had not run in Kah's favor at the time it was amended. The judgment is reversed and remanded to the trial court with instructions to enter judgment for the Society on the complaint and to permit Baker to refile his cross-complaint for indemnity against Kah. Appellant is entitled to costs on appeal.

Strankman, P. J., and Stein, J., concurred.

---

[18]The causes of action against the Society and deGuigne were determined against Baker by the jury. All issues regarding Kah's cross-complaint were tried, and Kah did not prevail. No appeal was filed. Therefore, judgment on that cross-complaint is final.