[No. B084069. Second Dist., Div. One. Feb. 1, 1996.]

ROY E. NAFTZGER, JR., Plaintiff, Cross-defendant and Respondent, v. AMERICAN NUMISMATIC SOCIETY, Defendant, Cross-complainant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II-IV.

422

424

## COUNSEL

Fox & Horan, John R. Horan, Oleg Rivkin, Leonard, Dicker & Schreiber, Richard C. Leonard and David N. Schultz for Defendant, Cross-complainant and Appellant.

Crosby, Heafey, Roach & May, Carla J. Shapreau, Paul D. Fogel and Jacques B. LeBoeuf as Amici Curiae on behalf of Defendant, Cross-complainant and Appellant.

Sheppard, Mullin, Richter & Hampton, Phillip A. Davis, Michelle Sherman and Karin Dougan Vogel for Plaintiff, Cross-defendant and Respondent.

## OPINION

**ORTEGA, J.**—This appeal involves an unresolved question of when the three-year limitations period of Code of Civil Procedure section 338, subdivision (c)[1] commences to run on a cause of action for the return of property stolen before the 1983 amendment to that statute. We hold, as a matter of law, that the cause of action in this case accrued when the owner discovered the identity of the person in possession of the stolen property, and not when the theft occurred. We reverse the judgment and remand.

### SUMMARY

Section 338, subdivision (c) imposes a three-year limitations period for actions seeking the return of stolen property. Before 1983, the Legislature left unanswered the general question of whether the cause of action immediately accrues when the theft occurs, or when the owner discovers: (a) the theft, (b) the identity of the thief, or (c) the identity of the person in possession of the stolen property.

In 1983, the Legislature provided a partial answer by amending section 338, subdivision (c) to read that the cause of action does not accrue until the owner, the owner's agent, or the investigating law enforcement agency discovers the whereabouts of the stolen articles, provided that the articles

---

[1]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

possess historical, interpretive, scientific, or artistic significance.[2] The rare coins at issue in this appeal meet that standard, but they were stolen prior to the effective date of the 1983 amendment. The amended statute does not indicate whether its discovery rule of accrual should be applied retroactively.

In this opinion, we hold, as a matter of law, that there was a discovery rule of accrual implicit in the prior version of section 338, subdivision (c) for the return of stolen property. We conclude that under the prior version of the statute, the cause of action accrued when the owner discovered the identity of the person in possession of the stolen property, without regard to the owner's diligence or lack thereof in ferreting out that information. Our holding, limited to the prior version of section 338, subdivision (c), expresses no opinion as to whether, in actions brought under the common law or in equity, the plaintiff will be time barred by laches or the lack of reasonable diligence in identifying the person in possession of the property.

We also express no opinion as to whether, in cases covered by other statutes permitting the disposition of stolen, lost, or unclaimed property (see e.g., Civ. Code, § 2080.5 [authorizes police or sheriff's departments to sell lost and unclaimed property by public auction in certain cases when the owner cannot, with reasonable diligence, be found]; Pen. Code, §§ 246.1, subd. (f), 12028, subd. (f); Veh. Code, §§ 14607.6, subd. (*l*), 23198, subd. (g) [authorizes the sale of stolen vehicles or firearms whose owners cannot be reasonably identified]), the owner has any recourse under section 338, subdivision (c) against the purchaser of the property. We further note that while this case involves the sale of stolen coins, the sale was conducted by a private party, the alleged thief, and not by a coin dealer governed by Business and Professions Code section 21626 et seq. Those sections, among other things, require coin dealers to file daily reports, after receipt or purchase of coins, with the chief of police or sheriff, and to hold the coins for 30 days before disposing of them. We express no opinion as to whether the owner has any recourse under section 338, subdivision (c) against one who buys stolen coins from a coin dealer following the 30-day waiting period of Business and Professions Code section 21636.

---

[2]At the time of the 1983 amendment, section 338, subdivision (c) was designated as subdivision (3). By later amendment, the subdivision was redesignated as subdivision (c). For the sake of convenience, we will refer to the subdivision by its present designation only.

Section 338, subdivision (c) presently imposes a three-year limitations period for: "An action for taking, detaining, or injuring any goods or chattels, including actions for the specific recovery of personal property. The cause of action in the case of theft, as defined in Section 484 of the Penal Code, of any article of historical, interpretive, scientific, or artistic significance is not deemed to have accrued until the discovery of the whereabouts of the article by the aggrieved party, his or her agent, or the law enforcement agency which originally investigated the theft."

With these limitations in mind, we recognize that our holding, which applies a discovery rule of accrual to any article stolen prior to the effective date of the 1983 amendment to section 338, subdivision (c), is broader in scope than the amendment's discovery rule, which applies only to articles of historical, interpretive, scientific, or artistic significance. We conclude, however, that to the extent the amendment's restrictive application of the discovery rule suggests there was no discovery rule prior to the effective date of the amendment, that inference is unwarranted. Under the prior version of the statute, the cause of action accrued upon the owner's discovery of the identity of the person in possession of the stolen property, as explained in this opinion.

## BACKGROUND

Appellant, the American Numismatic Society, is a nonprofit New York corporation created in the 1800's. Appellant operates a museum in New York City that has a collection of over 750,000 coins and numismatic objects.

In 1937, the museum received a donation from George H. Clapp of 1,542 large copper cents, minted between 1793 and 1857 by the United States Mint in Philadelphia. At some time prior to 1970, 129 of the Clapp coins were stolen from the museum. The thief surreptitiously substituted inferior coins of identical variety for 129 of the Clapp coins, and then removed the 129 Clapp coins from the museum without the museum's knowledge or consent. The thief is believed to be a certain coin collector, now deceased, who had frequented the museum for the purpose of examining the Clapp coins.

The museum alleges that it did not discover the theft by substitution until December 17, 1990, when it received a report from Del Bland, an expert on large copper cents who had examined the museum's Clapp collection. Bland's report allegedly established for the first time that the theft by substitution had occurred.

After receiving the Bland report, the museum learned that some of the allegedly stolen coins were in the possession of respondent Roy E. Naftzger, Jr., who had purchased the coins from the alleged thief. By letter dated February 12, 1993, the museum advised Naftzger of the museum's claim to the stolen coins in his possession and demanded their return.

Naftzger refused to return the coins, however, and, on March 1, 1993, filed an action in the Los Angeles County Superior Court against the museum, seeking declaratory relief and to quiet title to the allegedly stolen coins. On May 24, 1993, the museum answered the complaint and filed a

cross-complaint against Naftzger to recover the stolen coins and to quiet title to the coins.

On September 23, 1993, the court sustained a demurrer to the museum's first amended cross-complaint without leave to amend. The court found that the museum's statutory cause of action under the former version of section 338, subdivision (c) for the return of the allegedly stolen coins accrued on the date of the theft, which was more than three years before the museum had filed its cross-complaint in 1993. The court agreed with Naftzger that the discovery rule enacted by the 1983 amendment to section 338, subdivision (c) should not be applied retroactively to this case, in which the coins were stolen before the effective date of the amendment. The court also refused to borrow New York's demand rule of accrual under which the limitations period did not commence until the museum demanded the return of its stolen coins.

With the museum's cross-complaint held to be time barred, Naftzger moved for summary judgment on his complaint. He sought to quiet title to the coins as of January 1, 1973. The museum filed no opposition, explaining that the adverse ruling on its cross-complaint had rendered it incapable of opposing the motion. The museum expressly reserved its right, however, to challenge the summary judgment order in an appeal from the final judgment.

On February 14, 1994, the court granted Naftzger's summary judgment motion, finding he was entitled to quiet title to the coins on an adverse possession theory. On March 10, 1994, the court entered judgment quieting Naftzger's title as of January 1, 1973. The museum appeals from the judgment.

We received and granted the request of amici curiae (International Foundation for Art Research, Fine Arts Museums of San Francisco, Asian Art Museum of San Francisco, Oakland Museum, California Historical Society, Los Angeles County Museum of Art, Los Angeles County Museum of Natural History, and Museum of Contemporary Art) to file a brief in support of the museum's position. They contend this appeal raises issues of continuing significance to other museums whose works of art were stolen prior to the effective date of the 1983 amendment to section 338, subdivision (c).[3]

DISCUSSION

I

Under the facts as pled, Naftzger is innocent of any wrongdoing and was unaware of the theft when he purchased the coins. Even if Naftzger is an

[3]At oral argument, we granted the parties leave to file supplemental letter briefs on the applicability, if any, of Penal Code section 496 to the determination of the issues raised on appeal. The matter was submitted after the additional briefs were filed.

innocent purchaser, however, he did not acquire valid title to the coins, assuming they were stolen, because a thief cannot transfer valid title. On this record, Naftzger's obligation to return the coins will be established if and when the museum proves the coins are its stolen property.

■ We agree with the museum's contention that its cause of action under the prior version of section 338, subdivision (c) for the return of stolen property did not accrue when the theft occurred. The museum contends it timely filed its cross-complaint under the prior version of section 338, subdivision (c), within three years of discovering Naftzger's identity as the possessor of the stolen coins.

We first quote "a brief review of certain settled principles. ■ The statute of limitations usually commences when a cause of action 'accrues,' and it is generally said that 'an action accrues on the date of injury.' (*Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109 . . . .) Alternatively, it is often stated that the statute commences 'upon the occurrence of the last element essential to the cause of action.' (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187. . . ; [citation].) These general principles have been significantly modified by the common law 'discovery rule,' which provides that the accrual date may be 'delayed until the plaintiff is aware of her injury and its negligent cause.' (*Jolly* v. *Eli Lilly & Co., supra,* 44 Cal.3d at p. 1109.)" (*Bernson* v. *Browning-Ferris Industries* (1994) 7 Cal.4th 926, 931 [30 Cal.Rptr.2d 440, 873 P.2d 613].) "The discovery rule protects those who are ignorant of their cause of action through no fault of their own. It permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue. [Citation.]" (*April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 832 [195 Cal.Rptr. 421].)[4]

We have not found, nor have the parties cited, any California decisions explaining when a cause of action accrues under section 338, subdivision (c) for the recovery of stolen property.[5] The few decisions that discuss the accrual of a cause of action under section 338, subdivision (c) involved the conversion of articles that were *entrusted* to the wrongdoer. ■ In practical terms, a conversion can only occur after an owner has entrusted his property to another. Thereafter, if the possessor acts in a manner inconsistent

[4]Here, however, we hold that the limitations period commences to run under former section 338, subdivision (c), when the plaintiff actually discovers the identity of the person in possession of the stolen property.

[5]As the majority opinion in *Bernson* v. *Browning-Ferris Industries, supra,* 7 Cal.4th 926, recognized, the law is unsettled in this state as to whether "a thief, for example, who leaves *no clues to his identity* [may] defeat an action by the rightful owner to recover the stolen property if the owner fails to find and serve the culprit within the applicable limitations period[.]" (*Id.* at p. 933.)

with the owner's interests, the owner's cause of action for conversion accrues at that time. (*Niiya* v. *Goto* (1960) 181 Cal.App.2d 682, 688 [5 Cal.Rptr. 642].) In the context of a bailment, for example, if the bailee does nothing inconsistent with the bailor's right of ownership or in repudiation of that right, the bailor's cause of action for the return of the property does not accrue until the bailee *refuses a demand* to surrender the property. (*Id.* at pp. 688-690; *Coy* v. *County of Los Angeles* (1991) 235 Cal.App.3d 1077, 1087-1088 [1 Cal.Rptr.2d 215].)

While an owner's cause of action accrues when the conversion occurs even if the owner is ignorant of the wrong committed (*Rose* v. *Dunk-Harbison Co.* (1935) 7 Cal.App.2d 502, 505 [46 P.2d 242]), fraudulent concealment provides an exception to the general rule: "This rule . . . is not absolute; for example, where there has been a fraudulent concealment of the facts the statute of limitations does not commence to run until the aggrieved party discovers or ought to have discovered the existence of the cause of action for conversion. [Citations.]" (*Bennett* v. *Hibernia Bank* (1956) 47 Cal.2d 540, 561 [305 P.2d 20].)

In this case, the thief fraudulently concealed the taking by substituting inferior coins of the same variety for the stolen Clapp coins. Under these facts, the limitations period for prosecuting the thief for grand theft did not commence until the crime was discovered. (Pen. Code, § 800.)[6] By then, however, the thief had sold the coins to a person whose identity was unknown to the museum. It would be inconsistent to bar the museum, which was unaware of the theft for at least three years, from suing Naftzger, whose identity was unknown within the three years following the undiscovered theft, when the criminal limitations period against the thief did not even commence running until the crime was discovered.

Naftzger points out, however, that at least one case has held that an owner's cause of action against the innocent purchaser of *converted* property accrues on the date of the sale, even though the owner is ignorant of the transaction. (*First National Bk.* v. *Thompson* (1943) 60 Cal.App.2d 79 [140 P.2d 75].) This result is not inexplicable. An owner who *entrusts* his property to another bears some responsibility for creating a situation whereby an

---

[6]Before the amendment to Penal Code section 800, effective November 10, 1969, grand theft had to be prosecuted within three years of the crime. (*People* v. *Swinney* (1975) 46 Cal.App.3d 332, 336 [120 Cal.Rptr. 148], disapproved on other grounds in *People* v. *Zamora* (1976) 18 Cal.3d 538, 565, fn. 26 [134 Cal.Rptr. 784, 557 P.2d 75].) Grand theft must now be prosecuted within three years after the discovery of the crime, which is not the same as mere discovery of the loss. Discovery of a loss without discovery of a criminal agency is insufficient to start the running of the limitations period for prosecution of grand theft. (46 Cal.App.3d at p. 340; see Pen. Code, § 803, subd. (c)(1).)

innocent purchaser is led to buy goods from an agent who is acting in excess of his authority. The law sometimes protects the innocent purchaser's title against the defrauded owner, depending upon the circumstances.

Under the California Uniform Commercial Code on sales, for example, an owner who entrusts his "goods to a merchant who deals in goods of that kind gives him the power to transfer all rights of the entruster to a buyer in ordinary course of business." (Cal. U. Com. Code, § 2403, subd. (2).) The merchant in that situation has the power to transfer valid title to an innocent purchaser even though the owner has not authorized the sale. "Entrusting," as used in section 2403 of the California Uniform Commercial Code, "includes any delivery and any acquiescence in retention of possession for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like; regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law." (*Id.* at subd. (3).)

Under agency law principles, a similar result may be had if the court precludes the defrauded owner from disputing the validity of the innocent purchaser's title. The court will estop an owner who, by his conduct, has led the purchaser to believe that the agent was authorized to sell the property. (See *Hartong* v. *Partake, Inc.* (1968) 266 Cal.App.2d 942, 960 [72 Cal.Rptr. 722]; *Pagan* v. *Spencer* (1951) 104 Cal.App.2d 588 [232 P.2d 323]; Civ. Code, § 2317.) For example, an owner who entrusted his car to a used car dealer for the purpose of finding a buyer was held to be estopped to deny the validity of the innocent purchaser's title in *Carter* v. *Rowley* (1922) 59 Cal.App. 486 [211 P. 267]. In *Carter,* the used car dealer exceeded his actual authority by selling the car without first bringing the prospective purchaser and owner together. The court reasoned, however, that a purchaser who enters a car lot that advertises used cars for sale may rely upon the dealer's ostensible authority to sell the cars in his possession. ▮ "As between two innocent persons, one of whom must suffer, the loss should fall on the principal who has armed the agent with apparent authority and thus has enabled him to obtain the advantage of the person with whom he trades, rather than on the purchaser, where the agent acts within the apparent scope of his authority and there is nothing in the transaction to put the purchaser on notice that the agent is exceeding his authority. [Citation.]" (*Id.* at p. 489.)

*First National Bk.* v. *Thompson, supra,* 60 Cal.App.2d 79, cited by Naftzger, is an ostensible agency and estoppel case. There, the bank entered into a $1,000 conditional sales contract for a Speeder gas shovel with Higgins, the purchaser. Higgins lawfully took possession of the shovel but then

defaulted on the payments. The bank left the shovel, which was broken, in Higgins's possession while the bank tried to sell it for $300. Unable to find a buyer, the bank authorized Higgins to sell the shovel subject to the bank's approval. Higgins sold the shovel to Thompson for $400, but he kept the proceeds and lied to the bank about lending the shovel to a friend who was going to repair it in return. The bank finally found a buyer, and filed suit against Thompson to recover the shovel. The action, filed more than three years after Thompson bought the shovel, was held to be barred by the statute of limitations. The court also ruled that the bank was estopped to deny the validity of Thompson's title.

The holding in *First National Bk.* v. *Thompson, supra*, 60 Cal.App.2d 79, that the bank's cause of action accrued on the date of the conversion, does not support the implication that the museum's cause of action against Naftzger accrued on the date of the theft. This is not an entrustment or ostensible agency case. Here, the property was *stolen* by an unknown thief; it was *not entrusted* to the thief in order to find a buyer for the coins. Accordingly, the museum has done nothing to warrant being estopped to deny the validity of Naftzger's title.

In any conversion situation, the owner, upon discovering the injury, can immediately sue the person who was originally entrusted with possession. Because the identity of that person is known, the owner can file a lawsuit and utilize the civil discovery tools to ascertain the whereabouts of the property and the identities of any remaining Doe defendants. In the theft situation, on the other hand, the owner cannot sue the thief or the innocent purchaser prior to discovering their identities.

The stolen property situation thus runs contrary to the general rule in California that knowledge of the identity of the defendant is not essential to a claim and ignorance of the defendant's identity will not toll the statute of limitations. The general rule, which distinguishes between the plaintiff's "ignorance of the wrongdoer and ignorance of the injury itself[,] . . . is premised on the commonsense assumption that once the plaintiff is aware of the injury, the applicable limitations period (often effectively extended by the filing of a Doe complaint) normally affords sufficient opportunity to discover the identity of all the wrongdoers." (*Bernson* v. *Browning-Ferris Industries, supra*, 7 Cal.4th at p. 932.) A plaintiff injured by a drug produced by an unknown manufacturer, for example, can still sue the known manufacturers and Doe defendants, and then take discovery to identify the others. (*Id.* at pp. 932-933.) "That, indeed, is the normal situation for which the fictitious name statute, . . . section 474, is designed: when the plaintiff is ignorant of the name of '*a* defendant,' the plaintiff must file suit against the

known wrongdoers, and, when the Doe's true name is discovered, the complaint may be amended accordingly. (. . . § 474.)" (*Id.* at p. 933.)

Filing a suit against Doe defendants, however, is a meaningless exercise when the owner does not know the identity of the thief or the person in possession of the stolen property, or even which court has jurisdiction. Witkin's general observation, that a plaintiff has little reason to file suit if he knows nothing of the identity of the wrongdoer, aptly describes why justice requires that the discovery rule be applied to the statute now before us. As Witkin stated: "An injured person does not go to the expense of legal representation and litigation merely because he knows he has been wronged. If he knows something of the *identity* of the wrongdoer he will sue though ignorant of his *true name,* and this is of course the use for which the pleading rule was designed. [Citation.] But if he has no knowledge of the wrongdoer's identity . . . it is scarcely expectable that he will file an action and hope that something turns up to make it worthwhile. . . ." (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 529, p. 558.)

The criminal statute on withholding, concealing, and selling stolen property (Pen. Code, § 496) lends support to our conclusion that the museum's cause of action against Naftzger did not accrue until it discovered he was the one who had purchased the stolen coins. ■ The crimes of withholding, concealing, or selling stolen property must be prosecuted within three years of their commission. (*People* v. *Swinney, supra,* 46 Cal.App.3d at p. 336.) Those offenses may be prosecuted even after the limitations period for the crime of receiving stolen property has expired. While a thief may not be convicted, based on the same conduct, of both theft and concealment, because they are part of a single process, a thief who commits a new act of concealment entirely separate from the theft may be prosecuted for the later concealment. (*Id.* at p. 337; see *People* v. *Strong* (1994) 30 Cal.App.4th 366, 373 [35 Cal.Rptr.2d 494], which discusses the 1992 amendment to Penal Code section 496, effective January 1, 1993, which removed the bar against convicting a thief of the separate and independent offenses of receiving, concealing, or withholding the property.)

The rationale underlying the separate limitations periods for receiving, concealing, withholding, and selling stolen property is that the law imposes a continuing affirmative duty to restore stolen property to its rightful owner. (*Williams* v. *Superior Court* (1978) 81 Cal.App.3d 330, 344 [146 Cal.Rptr. 311]; *People* v. *Johnson* (1963) 223 Cal.App.2d 511, 513 [35 Cal.Rptr. 883]; Pen. Code, § 496.) Stolen property remains stolen property, no matter how many years have transpired from the date of the theft. Moreover, a thief cannot convey valid title to an innocent purchaser of stolen property, and an

innocent purchaser cannot withhold or sell the stolen property after learning of the theft without risk of violating Penal Code section 496. (See *Suburban Motors, Inc.* v. *State Farm Mut. Auto. Ins. Co.* (1990) 218 Cal.App.3d 1354, 1359-1361 [268 Cal.Rptr. 16] [under section 2403 of the California Uniform Commercial Code, an automobile thief cannot convey valid title to the stolen car to an innocent purchaser].)

Because the criminal limitations period for prosecuting a thief for wrongfully concealing, withholding, or selling stolen property runs anew with each violation of Penal Code section 496 that is independent of the initial act of theft, common sense dictates that the civil cause of action for recovering stolen property under section 338, subdivision (c) does not necessarily accrue when the theft occurs, or even when the owner discovers the theft. For until the owner discovers the identity of the thief or the person in possession of the stolen property, the owner is powerless to institute an action under section 338, subdivision (c) for the return of the property.[7]

For the purposes of this action, filed under the prior version of section 338, subdivision (c), we hold the limitations period commenced when the owner discovered the identity of the person in possession of the property.[8] We do not address the numerous troubling questions inherent in the possible myriad circumstances surrounding the recovery of stolen property. We do not decide, for example, if an owner who fails to file a lawsuit under the prior version of section 338, subdivision (c) within three years of discovering the property's whereabouts will be time barred if the thief or subsequent possessor later moves the stolen property to an unknown location, sells, or continues to withhold the stolen property. In those situations, the thief's or subsequent possessor's new acts of concealing, selling, or withholding the stolen property may trigger new limitations periods under

---

[7]We note that other potential remedies exist to assist the rightful owner in regaining possession of stolen property once the possessor's identity is discovered. If, for example, there is a criminal prosecution against the possessor of stolen property under Penal Code section 496, the law permits the owner to recover the stolen property upon conviction. (Pen. Code, §§ 679.02, 1411.) In other cases, the owner might be able to sue the withholder or seller of stolen property for committing an act of unfair competition and obtain restitution. (Bus. & Prof. Code, § 17200 et seq.)

[8]Other jurisdictions have reached a similar conclusion. The following cases were cited in support of the museum's position that the owner's cause of action does not accrue until the identity of the person in possession of the stolen property is discovered: *Hoelzer* v. *City of Stamford, Conn.* (S.D.N.Y. 1989) 722 F.Supp. 1106, 1112-1114 (affd., *Hoelzer* v. *City of Stamford, Conn.* (2d Cir. 1991) 933 F.2d 1131, 1135-1138); *Autocephalous Greek-Orthodox Church* v. *Goldberg* (S.D.Ind. 1989) 717 F.Supp. 1374, 1388-1389 (affd., *Autocephalous Church* v. *Goldberg & Feldman Arts* (7th Cir. 1990) 917 F.2d 278, 287-290); *Spitler* v. *Dean* (1989) 148 Wis.2d 630 [436 N.2d 308-309]; *O'Keeffe* v. *Snyder* (1980) 83 N.J. 478 [416 A.2d 862, 868-870]; *Royal Indem. Co.* v. *Petrozzino* (3d Cir. 1979) 598 F.2d 816; 821; *Lowney* v. *Knott* (1956) 83 R.I. 505 [120 A.2d 552, 555-556, 57 A.L.R.2d 1036].

Penal Code section 496. If a criminal prosecution is successfully brought, the owner will be entitled to repossess the stolen property under Penal Code sections 679.02 or 1411. But if no criminal prosecution is filed, will the owner be time barred under the prior version of section 338, subdivision (c), simply because the owner did not sue within three years of the discovery of the whereabouts of the property? If property once stolen remains stolen, would a thief's void title be placed beyond the reach of the owner's civil lawsuit when the thief theoretically remains subject to prosecution under Penal Code section 496 for each new act of concealing, withholding, or selling the property?

We leave these troubling questions to be resolved in an appropriate case where the owner has failed to file a lawsuit within three years of discovering the person in possession of property stolen prior to the effective date of the 1983 amendment to section 338, subdivision (c). We defer until then the question of whether the statute of limitations will ever run against the owner in those situations.

We note that under New York's demand rule of accrual, the limitations period commences upon the owner's demand for the return of the stolen property, without regard to the owner's diligence in locating the property. (*Solomon R. Guggenheim Found.* v. *Lubell* (1991) 77 N.Y.2d 311, 317-320 [567 N.Y.S.2d 623, 569 N.E.2d 426].) New York's demand rule of accrual precludes a thief from, in effect, laundering stolen property by waiting out the civil limitations period and then fencing the goods free and clear of the owner's lawful title. New York thus avoids the prospect of allowing the person in possession of the stolen property to acquire, in effect, stolen property by expiration of the statute of limitations. (See *O'Keeffe* v. *Snyder*, *supra*, 83 N.J. 478 [416 A.2d at pp. 870-874], which rejects the doctrine of adverse possession with regard to chattels, but acknowledges that the effect of the expiration of the statute of limitations is to vest title in the possessor.)

We are not, however, faced with the task of harmonizing section 338, subdivision (c) with Penal Code section 496. This appeal resolves only the limited question of whether, under the prior version of section 338, subdivision (c), the museum's cause of action accrued when it discovered Naftzger's identity.

We reject Naftzger's assertion that we may not imply a discovery rule when there was none stated in the statute prior to the 1983 amendment to section 338, subdivision (c). Naftzger cites the general rule that where a term or phrase is used in one place but omitted in another, it should not be implied

where excluded. (*Pasadena Police Officers Assn.* v. *City of Pasadena* (1990) 51 Cal.3d 564, 576 [273 Cal.Rptr. 584, 797 P.2d 608].) The discovery rule, however, may be implied by judicial decision. Numerous courts have implied a discovery rule decision in other contexts. (*Huysman* v. *Kirsch* (1936) 6 Cal.2d 302, 312-313 [57 P.2d 908] [medical malpractice]; *April Enterprises, Inc.* v. *KTTV, supra*, 147 Cal.App.3d at pp. 826-833 [breach of fiduciary duty and breach of contract]; *Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 405-409 [163 Cal.Rptr. 711] [injury to real property]; *Seelenfreund* v. *Terminix of Northern Cal., Inc.* (1978) 84 Cal.App.3d 133 [148 Cal.Rptr. 307] [negligent breach of oral contract].) The Legislature's failure, prior to 1983, to express its intent as to when a cause of action accrues under section 338, subdivision (c), does not preclude us from deciding that question. (Cf. *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 190-194 [98 Cal.Rptr. 837, 491 P.2d 421] [judicial adoption of discovery rule in legal malpractice cases].)

The crucial date, under these facts and the preamended version of section 338, subdivision (c), was the date the museum allegedly discovered that Naftzger was in possession of the stolen coins. According to the allegations of the cross-complaint, the museum did not even discover the theft until December 17, 1990. When it later located some of the missing property in Naftzger's possession, it filed a cross-complaint within three years of the alleged date of discovery. These allegations were sufficient to overcome the demurrer based on the statute of limitations defense. Accordingly, we reverse the order sustaining the demurrer and remand with instructions that the trial court enter a new order overruling the demurrer.

## II-IV*

. . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

As for the cross-complaint, we reverse the order sustaining the demurrer and remand with directions to enter a new order overruling the demurrer. With regard to the complaint, we reverse the summary judgment and judgment and remand with directions to enter new orders denying the underlying motions. Appellant is awarded its costs.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.

A petition for a rehearing was denied March 4, 1996, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied April 25, 1996. Kennard, J., was of the opinion that the petition should be granted.

*See footnote, *ante*, page 421.