[No. B155353. Second Dist., Div. Six. Dec. 2, 2002.]

ROBERT B. OLSEN et al., Plaintiffs and Respondents, v.
SANTA BARBARA'S GRACIOUS LIVING, INC., et al., Defendants,
ALEX MOVING & STORAGE, Claimant and Appellant.

**COUNSEL**

Marshall & Perrigue and Grover A. Perrigue III for Claimant and Appellant.

Michael B. Levin for Plaintiffs and Respondents.

## Opinion

**PERREN, J.**—Alex Moving & Storage (Alex) filed a third party claim asserting that it had a lien for transport and storage fees on personal property owned by respondents Robert B. Olsen and Elrita Olsen. Alex appeals from a judgment denying its claim, contending that the trial court erred in failing to enforce its lien. We agree and reverse.

### Facts and Procedural History

Robert B. and Elrita Olsen (Seller) owned a business providing residential care for the elderly. In January 2001, Seller entered into an agreement, called a "letter of intent," to sell the business to defendants Santa Barbara's Gracious Living, Inc., Steven Wall, and Ruth Wall (Buyer). The business consisted of several houses in which small numbers of elderly persons would reside under the care of Seller's staff. The sale of the business included the fixtures, furnishings and other personal property located in the houses.

Before completion of the sale, Seller allowed Buyer to take possession of three of the houses to facilitate the issuance of a license to Buyer. Buyer obtained a license and commenced operation of the business at the houses.

While Buyer was in possession, Buyer contracted with Alex to transport and store some of the furnishings and other items of household property (personal property) in the houses. Buyer never paid the transport and storage charges.

The sale of the business was not consummated. A few weeks after the personal property was removed from the houses, Seller filed a lawsuit against Buyer alleging breach of contract, conversion, fraud, and other causes of action based on Buyer's nonperformance of its obligations under the sale agreement.

Seller obtained a writ of possession for the personal property and levied on the writ. (Code Civ. Proc., § 512.010 et seq.) Alex filed a third party claim (Code Civ. Proc., § 720.110 et seq.) asserting that it was entitled to possession of the personal property as security for its transport and storage fees. After a hearing, the trial court denied Alex's claim. In reaching its decision, the court concluded that Alex contracted with Buyer, Alex failed to demand payment in advance, and Seller was not obligated to prevent Alex from moving the personal property.

## Discussion

■ Under California Uniform Commercial Code section 7307 (section 7307), a common carrier has a lien on the goods covered by a bill of lading to secure payment of storage and transportation charges.[1] Alex contends that it satisfied all requirements for a section 7307 lien, and that the trial court erred in refusing to enforce the lien against Seller's interest in the personal property.

■ We will uphold a trial court's ruling whenever it is made in accordance with law and is supported by substantial evidence. (*Oak Knoll Broadcasting Corp. v. Hudgings* (1969) 275 Cal.App.2d 563, 566 [80 Cal.Rptr. 175].) ■ Making all reasonable presumptions and inferences in support of the ruling (*ibid.*), we conclude that there was no substantial evidence to support the decision of the trial court denying enforcement of Alex's section 7307 lien against the personal property.

It is undisputed that Alex incurred fees for the transport and storage of goods covered by a bill of lading. The dispute in this case is enforcement of the section 7307 lien against Seller. A section 7307 lien on goods which the carrier "was required by law to receive for transportation is effective against" any person entitled to the goods unless the carrier has notice that the consignor "lacked authority to subject the goods to such charges and expenses." (§ 7307.) Any other section 7307 lien "is effective against the consignor and any person who permitted the bailor to have control or possession of the goods unless the carrier had notice that the bailor lacked such authority." (*Ibid.*)[2]

Alex does not contend that it was required by law to transport the goods. Therefore, the section 7307 lien is enforceable only if Seller permitted Buyer

---

[1]Section 7307 provides in its entirety: "(1) A carrier has a lien on the goods covered by a bill of lading for charges subsequent to the date of its receipt of the goods for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law. But against a purchaser for value of a negotiable bill of lading a carrier's lien is limited to charges stated in the bill or the applicable tariffs, or if no charges are stated then to a reasonable charge. [¶] (2) A lien for charges and expenses under subdivision (1) on goods which the carrier was required by law to receive for transportation is effective against the consignor or any person entitled to the goods unless the carrier had notice that the consignor lacked authority to subject the goods to such charges and expenses. Any other lien under subdivision (1) is effective against the consignor and any person who permitted the bailor to have control or possession of the goods unless the carrier had notice that the bailor lacked such authority. [¶] (3) A carrier loses his lien on any goods which he voluntarily delivers or which he unjustifiably refuses to deliver."

[2]If Buyer had possession and control of the goods when Buyer hired Alex to place it in storage, Buyer's entrustment of the goods to Alex would be a bailment and Buyer would be

to take control or possession of the goods and Alex lacked notice that Buyer did not have authority to incur transport and storage charges for the goods. (§ 7307.)

Although there is no California authority interpreting section 7307, the official comment to the Uniform Commercial Code states that the lien is valid "against anyone who permitted the bailor to have possession of the goods" even if the bailor had no authority to incur the charges. (U. Com. Code com., 23B West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 7307, p. 388.) In these situations, the lien is defeated only if the carrier has "knowledge or reason to know of the bailor's lack of authority." (*Ibid.*) Knowledge of the existence of another claim does not defeat the lien as long as the carrier is unaware that the bailor lacked authority to dispose of the goods in the normal course of its business. (*In re Sharon Steel Corp.* (Bankr. W.D.Pa. 1995) 176 B.R. 384, 389.) Contrary to the trial court's conclusion, the fact that the carrier contracts with the bailor is immaterial under the statute.

Here, undisputed evidence establishes that Buyer had possession and control of the personal property when Buyer hired Alex to place the property in storage. Seller gave Buyer possession before consummation of the sale agreement in order to satisfy a requirement of the licensing agency that a proposed licensee of a residential care facility have possession or control of the facility before issuance of a license. As Seller acknowledged, if Buyer "did not show control of property, then the Department would not license the facilities and there would be no deal." Evidence also establishes that Buyer did not merely "show" control of the property but had actual possession, obtained a license, and was operating the business at the time the personal property was transported to storage by Alex.

The record also shows the absence of evidence that Alex had the notice required to defeat a section 7307 lien. Actual notice requires "express information of a fact," but notice will be imputed if a person has knowledge of circumstances which, upon reasonable inquiry, would disclose the fact. (Civ. Code, §§ 18, 19; *First Fidelity Thrift & Loan Assn. v. Alliance Bank* (1998) 60 Cal.App.4th 1433, 1443 [71 Cal.Rptr.2d 295].) Here, there is no substantial evidence that Alex knew that Buyer did not have the authority to transport the personal property off the premises and place it in storage, or evidence that Alex reasonably should have inquired further regarding Buyer's authority.

To establish such notice, Seller relies on declarations from Robert Olsen and Peter Oster. Oster, Seller's employee, saw workers loading furniture

---

a "bailor" for purposes of section 7307. (See *Gebert v. Yank* (1985) 172 Cal.App.3d 544, 550-551 [218 Cal.Rptr. 585].)

onto a moving van at one of the houses operated by Buyer and had a brief conversation with a moving company worker. Oster testified that, in response to questions, the worker told him that the job had been authorized by "the owners" but could not identify who the owners were. Oster testified that he said nothing else to the movers. Robert Olsen testified that he also saw the movers at the same location, but said nothing to the movers and did not contact Buyer.

The inability of a worker for the moving company to identify the owners does not permit the inference that Alex knew or should have known that Buyer may not have had authority to order the work. And, other testimony by Oster and Olsen reveals that they made no effort to notify any moving company worker that there was a problem or to notify a principal of Alex that the transport and storage was unauthorized and should be stopped. We do not dispute the trial court's conclusion that Seller was not obligated to prevent the transport and storage, but section 7307 requires that Alex have some information from Seller or another source that there is a problem.

An owner who entrusts his property to another person bears some responsibility for allowing a third party to incur costs based on unauthorized actions taken by the other person. (See *Naftzger v. American Numismatic Society* (1996) 42 Cal.App.4th 421, 429-430 [49 Cal.Rptr.2d 784] [sale of property].) Here, by giving Buyer possession and control of the residential care facilities, Seller created a situation where Alex could reasonably believe that Buyer had authority to remove the property from the facilities as part of Buyer's business. Furthermore, despite an opportunity to correct this belief at the time the movers were at one of the houses, there is no evidence that Seller took action of any sort. "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." (Civ. Code, § 3543; see *Naftzger,* at p. 430.) Indeed, Seller and Buyer held themselves out as having consummated the sale to satisfy a requirement of the licensing authority.

Although our conclusion would be the same regardless of the burden of proof in the trial court, we reject Alex's contention that Seller had the burden of proving Alex had notice. Alex argues that our decision in *Whitehouse v. Six Corp.* (1995) 40 Cal.App.4th 527 [48 Cal.Rptr.2d 600], creates an exception to the statute mandating that the third party claimant has the burden of proving its claim. (Code Civ. Proc., § 720.360.) In *Whitehouse,* a creditor asserted that a third party claimant's ownership of property was based on a fraudulent transfer. The court held that the rule that a party claiming fraud has the burden of proving a fraudulent transfer applies in a

third party claim proceeding. (*Whitehouse,* at pp. 533-534.) Here, Alex's lien is not based on ownership and the disputed issues concern possession and notice, not a fraudulent transfer.

Alex also asserts that the procedures for adjudicating third party claims violate due process by denying Alex the right to a jury, discovery, and findings of fact. Similar contentions were rejected in *Whitehouse v. Six Corp., supra,* 40 Cal.App.4th at pages 535-537, and we will not address the contentions further. █ Consistent with rules of judicial restraint, we do not reach constitutional questions unless required to do so to dispose of the matter before us. (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230-231 [45 Cal.Rptr.2d 207, 902 P.2d 225].)

The judgment is reversed and remanded for further proceedings consistent with this opinion. Costs on appeal are awarded to appellant.

Yegan, Acting P. J., and Coffee, J., concurred.

A petition for a rehearing was denied December 30, 2002, and respondents' petition for review by the Supreme Court was denied March 19, 2003.