Filed 10/11/22 Hruby v. Podesta CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KAREN HRUBY,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>GARY PODESTA,<br><br>        Defendant and Respondent. | A160504<br><br>(San Mateo County<br>Super. Ct. No. CIV538687) |

Around 45 years after a sports car was stolen from a couple's garage, a car with the same Vehicle Identification Number (VIN) was found in the possession of respondent Gary Podesta. The husband who owned the sports car when it was stolen sued Podesta to regain possession of it, and after he died, his wife continued the lawsuit. Following a bench trial, the trial court concluded that there was insufficient proof that the found car was the same as the stolen one, and that the doctrine of laches barred the wife's claims in any event. Because substantial evidence supports these conclusions, we affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Raymond Hruby was interested in sports cars and, in 1969, purchased a 1966 Shelby Cobra. He alleged in his original, first-amended, and second-

1

amended verified complaints that he purchased the car from Thomas Lee Pottberg. After Raymond died, his wife, appellant Karen Hruby,[1] filed a third amended complaint alleging Raymond purchased the Cobra from "the prior owner," and at trial she testified he purchased it from Timothy Uschyk.

The record contains the following evidence that the Hrubys owned the Cobra: a copy of a 1968 California Department of Motor Vehicles (DMV) registration card issued in July 1968 and listing Pottberg as the owner of the Cobra; a September 1969 handwritten notice of deposit for the Cobra, purportedly signed by Uschyk; and a bill of sale also purportedly signed by Uschyk. Karen also produced a copy of a DMV registration card issued in October 1969 and listing Raymond as the owner of the Cobra and "UCB" (United California Bank) as the legal owner. According to Karen, she and Raymond obtained a small loan of around $700 from UCB to pay for repairs to the Cobra. She did not, however, provide any documents relating to the loan.

According to Karen, the Cobra was stolen from her and Raymond's Los Angeles garage in June 1970. A police report states that Karen left her house with the garage door locked with a padlock, and when she returned the garage door was open and the car had been taken.

Unbeknownst to the Hrubys, a man named John Godfrey Sanders, Jr. had a friend, "Greg," who offered to sell Sanders a Cobra with a VIN matching the one taken from the Hrubys' garage. The friend dropped off the car at the home of Sanders's parents, according to Sanders, but the sale was never finalized. Police arrived at the house and impounded the car because it had been reported stolen. Sanders investigated with law enforcement and learned that an insurance company acquired title to the Cobra. Sanders then

---

[1] To avoid confusion, we refer to the Hrubys by their first names.

purchased the car from the insurance company around the end of 1970. Sanders registered the Cobra.

A man named Royal Krieger bought the Cobra from Sanders in December 1971 for $7,500 in cash after the car was advertised in the Los Angeles Times and the San Francisco Chronicle. He testified at trial that he had no trouble registering the Cobra or obtaining the vanity license plate COBRA7. Krieger also testified that his Cobra never had an antenna, in contrast with pictures of the Hrubys with their Cobra that featured one. He said when he owned the car he had it stripped down to bare aluminum to have it repainted and would have noticed a patch over an antenna hole, but he did not see one.

Krieger was one of the founders of the Shelby American Automobile Club, which helped create the "Cobra World Registry" in 1976. Editions of the registry dating from 1976 through 2008 all listed the VIN of the Cobra the Hrubys reported missing in 1970.

Respondent Podesta bought the Cobra from Krieger in 1977 and signed the pink slip. The car was never registered to Podesta. Podesta's son believes this was because Podesta did not drive the Cobra and was usually in the process of restoring it.

None of the foregoing information was apparently known to Raymond for decades. The defense theory at trial was that Raymond, an attorney and CPA, would have been able to locate the Cobra with the VIN matching the one taken from his garage. The parties dispute the significance of the actions Raymond took (and did not take) to locate the vehicle. Karen testified that she and Raymond waited for police to solve the case. And she said that over the years, Raymond would clip newspaper ads for Cobras and other models of sports cars. She offered at trial an assortment of clippings with handwritten

dates between 1978 and 1983, including one dated December 21, 1980, for a Cobra with the same VIN as the one reported stolen.

Then in 2014, Raymond mentioned his Cobra to an automobile dealer, who offered to search for the car. The auto dealer in 2015 found a car with a VIN matching the one stolen from the Hrubys. It was in Podesta's possession and was currently being restored at a repair shop. A search of the Cobra's VIN in a state database did not indicate that it was currently reported stolen, and it was not currently registered with the DMV. The license plate on the car was not currently registered to the Cobra. An investigator searched whether there was ever an insurance payout on the vehicle, but no records could be located.

Raymond initiated this lawsuit in October 2015 to recover the Cobra. As amended, the complaint alleged causes of action for (1) claim and delivery, (2) conversion, and (3) receipt of stolen goods (Pen. Code, § 496, subds. (a) & (c)). He sought return of the vehicle or, if it could not be delivered, its value, plus attorney fees and other costs. Podesta raised the defense of laches.

By the time a court trial began in January 2020, Raymond had died, and Karen had been substituted as a party. Podesta likewise was unavailable because he was suffering encephalitis and dementia.

The trial court sided with Podesta and concluded that he was the correct owner of the Cobra, and thus each of Karen's causes of action failed. In its statement of decision filed in June 2020, the court concluded that Karen had not met her burden of proving that she was the legal owner of the Cobra and had not acted with necessary diligence in pursuing her claims. The court declared Podesta the true and correct owner of the Cobra and ruled that he was entitled to register the vehicle and obtain title and registration from the DMV.

## II.

### DISCUSSION

#### A. Appellant Did Not Conclusively Establish that the Cobra in Podesta's Possession Was the One that Was Stolen.

Karen first argues that "[t]he trial court erred when it found [she] was not the legal owner of the vehicle when it was originally stolen on June 16, 1970." (Capitalization and bold omitted.) This is a narrow characterization of the trial court's findings. In reviewing a judgment based on a statement of decision following a bench trial, we review the trial court's findings of fact under the deferential substantial-evidence standard of review. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) We presume the judgment is correct (*ibid.*), and it is appellant's burden to demonstrate error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) Karen has not met this burden.

The court concluded that Karen "did not meet her burden of proof that she was the legal owner of the Cobra at the time it was originally stolen, providing no Certificate of Title." The court went on to find that "[t]here is even a question raised by the testimony of Royal Krieger [who the court found to be a credible witness] and the photos taken in 1969 and 1971, as to whether the Cobra claimed by plaintiff and the Cobra possessed by [Podesta] are even the same vehicle. All of the photos submitted by [Karen] in support of her claim show that the car had a radio antenna, while those submitted by the defense, particularly those taken by Mr. Krieger on his return trip to Northern California in 1971, indicate no antenna. Mr. Krieger also testified that during the time he owned the Cobra, he had it repainted, after being stripped down to bare metal, and did not notice a patch at the spot where the antenna appeared in [Karen]'s photos." The court asked, "Could it be, as the defense suggested, that the Plaintiff, Mr. Hurby, and subsequent plaintiff Mrs. Hruby, knew that they had no right to the car?"

Karen focuses almost exclusively on the trial court's observation that she could not provide a certificate of title for the Cobra. She insists that the fact the Cobra was at one point registered to Raymond demonstrated that he was the owner of the car notwithstanding that the registration showed a lender as the legal owner. (E.g., Veh. Code, § 505 ["registered owner" is person registered as vehicle owner by DMV]; *Jolly v. Thornton* (1940) 40 Cal.App.2d Supp. 819, 822 [plaintiff was owner of vehicle damaged in accident notwithstanding loan on the car].) But it was not disputed that the Hrubys had owned *a* car and that it was stolen in 1970. What was disputed was whether the car in Podesta's possession was the same car that was stolen from the Hrubys.

The record contains abundant evidence that casts doubt on whether the Hrubys had a claim to the specific car found decades later in Podesta's possession. The retired Los Angeles police officer who led the investigation into whether the Cobra was stolen testified that there are "secret numbers" located on Shelby Cobras. He explained the phenomenon of "VIN switching," where a person physically removes a vehicle's VIN plate and replaces it with a different one. The investigator said that this is a "[v]ery common" practice for thieves. As for whether this has happened with Cobras, the investigator testified that he used a Shelby American registry book to investigate "clone cases," where VINs have been switched. He confirmed that "[c]ounterfeit Cobras are a real thing" and that "[t]hey happen." Although there was no sign of "VIN switching" with the car found in Podesta's possession, there was no way to confirm whether this had happened with the car the Hrubys had in 1970. This testimony, along with discrepancies over whether the car had an antenna, raised a doubt over whether the car the Hrubys had and the one found in 2015 were the same Cobra. Even assuming that Podesta was in

6

possession of the same Cobra that was taken from the Hrubys, the evidence suggested that Raymond may have been reimbursed for the loss, thus transferring ownership to an insurance company.

Karen does not directly address the foregoing evidence. She acknowledges that the trial court's statement of decision questioned whether the Cobra found with Podesta was the same one taken from the Hrubys, but she claims the trial court did not "make a finding on this issue or base its ruling . . . on this issue." But it was *Karen's* burden to show the two cars were the same, not the trial court's responsibility to conclude whether they were or not. Stating that there was a question on the issue was a different way of finding that Karen failed to meet her evidentiary burden. It is thus irrelevant whether Podesta registered the Cobra with the DMV, as Karen stresses on appeal, because it does not bear on whether she has a right to the vehicle. It also is irrelevant that the 1997 Shelby American World Registry listed Podesta's Cobra as having a stereo, as this does not amount to "undisputed" evidence that this car was the same as the one with an aerial taken from the Hrubys.

Liberally construing the trial court's findings of fact to support the judgment and considering the evidence in the light most favorable to Podesta (*Thompson v. Asimos*, *supra*, 6 Cal.App.5th at p. 981), we must reject Karen's argument that she established she was the owner of the Cobra in Podesta's possession.

### B. Substantial Evidence Supports the Finding that Laches Barred Karen's Claim to the Cobra.

Karen also argues that the trial court misapplied the law regarding the statute of limitations and laches. She again mischaracterizes the trial court's findings.

7

"Laches is an equitable defense available when a party unreasonably delays enforcing a right, and when granting the relief sought would prejudice the adverse party." (*Decea v. County of Ventura* (2021) 59 Cal.App.5th 1097, 1104.) We review the trial court's findings of delay and prejudice for substantial evidence. (*Ibid.*)

In its statement of decision, the trial court stated it "fe[lt] compelled" to address laches and Karen's lack of diligence in pursuing her claim even though it was unnecessary to reach the issue. As for the Hrubys' delay, the court noted that Raymond "should have been familiar with research tools and techniques," yet chose only to clip ads. Because those clippings included vehicles other than Cobras, the trial court concluded it appeared that Raymond "was putting together a wish list as opposed to conducting a reasonable search." After Raymond told his friend about the Cobra, it was that friend, not Raymond himself, who initiated a search and found the Cobra relatively quickly.

As for prejudice to Podesta, the trial court noted that the passage of time meant that Raymond unfortunately died while litigation was pending. This prevented the defense from asking him about, among other things, the person from whom he purchased the Cobra, the amount of the loan from United California Bank, his efforts to locate the vehicle, and why he did not have the pink slip for the Cobra. And the defense also was deprived of relevant documents from several entities that had purged their records from the 1970s: the successor bank of United California Bank, the Los Angeles Police Department, and the DMV. And because of his illnesses, Podesta himself was unable to testify about work he had done on the Cobra, the details surrounding his purchase of the vehicle, and his reasons for not

8

registering it.  The lack of all this relevant information meant that Podesta was "[c]learly . . . prejudiced" by Karen's lack of diligence.

Instead of addressing the trial court's conclusions regarding *laches*, Karen focuses on the *statute of limitations*, a separate defense that the trial court specifically found was irrelevant here.  (Code Civ. Proc., § 338, subd. (c)(1)–(2) [three-year statute of limitations for action to recover personal property, which begins to run upon the discovery of the property's whereabouts].)  True enough, the three-year limitations period for a cause of action to recover stolen property accrues "when the owner discover[s] the identity of the person in possession of the stolen property, and not when the theft occurred." (*Naftzger v. American Numismatic Society* (1996) 42 Cal.App.4th 421, 424 (*Naftzger*).)  Karen relies heavily on *Naftzger*, which was an appeal from the grant of summary judgment on a complaint and the sustaining of a demurrer on a cross-complaint, and ruled only on the legal question of when the limitations period began to run.  (*Id.* at pp. 424–425, 435.)  But the court specifically "express[ed] no opinion as to whether, in actions brought under the common law or in equity, the plaintiff will be *time barred by laches or the lack of reasonable diligence* in identifying the person in possession of the property." (*Id.* at p. 425, italics added.)  The trial court here noted that here, unlike in *Naftzger*, it was making specific findings on the laches defense.

Karen ignores all of the trial court's findings about laches and instead argues at length that the three-year statute of limitations period applies under *Naftzger*.  Even if it is true that her causes of action were not time-barred as a legal matter, Podesta successfully established that they were barred as an equitable matter by laches.  As Karen offers no argument to the contrary, we reject her contentions.

9

## III.
### DISPOSITION

The judgment is affirmed. Respondent shall recover his costs on appeal.

_____

Humes, P.J.


WE CONCUR:



_____

Margulies, J.



_____

Banke, J.




*Hruby v. Podesta*  A160504


11